International Products Company, Respondent, *v.* Erie Railroad Company, Appellant.

Negligence — warehousemen — carriers — railroads — liability for loss arising from wrong information negligently given — erroneous information as to place of storage given by carrier which had agreed to receive goods from steamer and store them pending shipping orders — insurance placed by owner on such information — destruction of goods by fire and loss of insurance for misdescription — carrier may be held liable for loss on theory of negligence — immaterial that information was not given by carrier to serve its own purposes — contributory negligence a question of fact.

1. Liability for loss arising from wrong information, negligently given, arises only where there is a duty, if one speaks at all, to give the correct information. In addition there must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.

2. Where plaintiff, an importer, expecting a consignment of goods by steamer, arranged with defendant, a common carrier, to receive

them on its lighters, transfer them to its warehouse docks and then ship them upon order and, after arrival of the steamer, inquired of defendant where the goods were to be stored, stating that it desired the information for the purpose of obtaining insurance, and was informed that they were at a certain dock, whereupon it obtained its insurance giving the same information to the insurer, but as matter of fact the goods had not yet been received by defendant and when received one-half thereof were stored at another dock, which, thereafter, with the goods thereon was destroyed by fire, whereby plaintiff lost its insurance for misdescription, it may maintain an action against defendant to recover its loss on the theory of negligence. (*Bush Terminal Co.* v. *G. & R. Fire Ins. Co.*, 182 App. Div. 748; 228 N. Y. 575; *Glanzer* v. *Shepard*, 233 N. Y. 236, followed.)

3. The fact that the answer was not given to serve the purposes of the defendant itself is immaterial and whether or not plaintiff should have discovered the error by an inspection of the bill of lading when it received it was a question of fact.

*International Products Co.* v. *Erie R. R. Co.*, 216 App. Div. 702, affirmed.

(Argued January 13, 1927; decided February 23, 1927.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 10, 1926, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*William C. Cannon, Theodore Kiendl* and *Russel S. Coutant* for appellant. Defendant was under no duty of care. (*Railroad Co.* v. *Stout,* 17 Wall. 657; *United Zinc Co.* v. *Britt,* 258 U. S. 268; *New York, New Haven & Hartford R. R. Co.* v. *Fruchter,* 260 U. S. 141; *Walsh* v. *Railroad,* 145 N. Y. 301; *Flaherty* v. *Metro Station, Inc.,* 202 App. Div. 583; *Hall* v. *International Railway,* 184 App. Div. 925; 227 N. Y. 619; *Elefante* v. *Pitzitz,* 182 App. Div. 819; 230 N. Y. 567; *Chrystal* v. *Troy & Boston R. R. Co.,* 105 N. Y. 164; *Albrecht* v. *Rochester, etc., R. R. Co.,* 205 N. Y. 230; *McPherson* v. *Buick Motor Co.,* 217 N. Y. 382.) The defendant was not negligent. (*Laurence* v. *Congregational Church,* 164 N. Y. 115; *Second Nat.*

*Bank* v. *Weston,* 172 N. Y. 250.)  Plaintiff was guilty of contributory negligence as a matter of law.  (*American Travel, etc.,* v. *Van Blerkom,* 214 N. Y. Supp. 753.)

*David Paine* for respondent.  A cause of action on contract was made out.  (*Mortimer* v. *Otto,* 206 N. Y. 89; *Bush Terminal Co.* v. *Globe, etc., Co.,* 182 App. Div. 748; 228 N. Y. 575.)  Defendant is liable for its negligent and false representation to the plaintiff as to the location of the goods.  (*Bush Terminal Co.* v. *Globe & Rutgers Fire Ins. Co.,* 182 App. Div. 748; 228 N. Y. 575; *Canadian Agency, Limited,* v. *Assets Realization Co.,* 165 App. Div. 96; *Morris* v. *Brown,* 111 N. Y. 318.)  Contributory negligence was an issue for the jury.  (*Kettle* v. *Turl,* 162 N. Y. 255.)

ANDREWS, J.  Ear y in August, 1921, the plaintiff was expecting a valuable shipment consigned to it to arrive in New York on the steamer *Plutarch*.  It was an importer selling the goods received to other customers.  Consequently it was necessary that such goods should be stored until resold, either in ordinary warehouses or in one maintained by some carrier, who might in turn send them over its lines to the ultimate consumer.

The plaintiff had adopted the first method, but now it seems to have thought that the second might be preferable.  Therefore it inquired of the defendant what its prices would be and arranged, while no definite contract was executed, that the goods when they arrived should be stored at the railroad company's warehouse docks.

The *Plutarch* was to dock in Brooklyn.  There the Erie would receive the goods on its own lighters, transfer them to New Jersey and then ship them on upon the order of the plaintiff.  Both parties must have understood that at some period a bill of lading was to be issued, but certainly there would be some delay.  It could hardly be issued simultaneously with the receipt of the goods on the lighters, and the custom seems to have been

that after the goods were stored by the railroad company in its warehouse a notice of their receipt was to be given to the plaintiff who then prepared a bill of lading in the usual form, signed it, sent it to the defendant, who in turn signed it and returned it to the plaintiff.

Here then were the parties both understanding that when the goods arrived in Brooklyn they were to be taken by the defendant to its docks and there stored for a certain price and that thereafter the ordinary bill of lading would be executed.

The *Plutarch* reached Brooklyn between August 10th and August 15th and was unloaded in three or four days. The goods in question were covered by insurance until they reached the warehouse. Naturally the plaintiff was desirous of protecting itself from that time forward and to protect itself it was essential that the particular warehouse in which they were stored should be made known to the insurer. Therefore on August 17th, giving this reason for its question, it inquired of the defendant where the goods would be stored. The latter, taking time to obtain the required information, replied they were docked at dock F, Weekawken. From this reply the plaintiff had the right to infer that the goods were already received and stored. It immediately thereafter obtained its insurance, giving the same information to the insurer.

The answer was erroneous. In fact the goods were not received from the steamer by the defendant until August 27th and August 31st. The plaintiff's officer, however, having charge of the transaction did not know but what the representation was true, nor did the plaintiff itself know that it was not, unless it is a fact that under no circumstances might the defendant have obtained possession of the goods from the *Plutarch* without a so-called " delivery order " signed by the plaintiff. The latter did know that such an order was not given until August 26th, but in the hurry of business, dealing with

a responsible party, we have no reason to suppose that the *Plutarch* might not have delivered the goods trusting to receive the " delivery order " if necessary later. Certainly nothing in the testimony negatives this conclusion. We have then the false assurance as to an existing fact, given by one who had arranged to become and who in fact subsequently did become bailee of these goods, to the owner, to enable it to obtain valid insurance thereon and in reliance upon which the owner acted.

One-half of the goods were in fact stored when they arrived not on dock F but on dock D, both docks belonging to the defendant. When the formal bill of lading prepared by the defendant some time later was returned to it early in September a close examination of certain stamps impressed upon it would have revealed the truth. It was not discovered, however. In November dock D with the goods stored thereon was destroyed by fire. The plaintiff could obtain no insurance because of the misdescription in the policy. It, therefore, seeks to recover the insurance it would have been entitled to had it not given the misdescription in reliance on the statement of the defendant. The defendant denies liability on any theory, either of tort or of contract.

In view of the *Bush Terminal Case* (182 App. Div. 748; affd., 228 N. Y. 575), it concedes its liability had the goods been in its possession on August 17th. As, however, the facts show conclusively they were not, the plaintiff it says may not recover. We hold, however, that the plaintiff shows a cause of action on the theory of negligence, interpreting the conversation of August 17th as we have done.

Confining ourselves to the issues before us we eliminate any theory of fraud or deceit. Had they been present other questions would arise. (*Taylor* v. *Commercial Bank*, 174 N. Y. 181.) We come to the vexed question of liability for negligent language. In England the rule is fixed. " Generally speaking there is no such thing as liability for

negligence in word as distinguished from act." (Pollock on Torts [12th ed.], p. 565; *Fish* v. *Kelby*, 17 C. B. [N. S.] 194.) Dicta to the contrary may be found in earlier cases. (*Burrowes* v. *Lock*, 10 Ves. 471; *Slim* v. *Croucher*, 1 DeG., F. & J. 518; discussed in *Brownlie* v. *Campbell*, L. R. 5 A. C. 925, 935.) But since *Peek* v. *Derry* (L. R. 14 A. C. 337), although what was said was not necessary to the decision, the law is clearly to the effect " that no cause of action is maintainable for a mere statement, although untrue, and although acted upon to the damage of the person to whom the statement is made unless the statement be false to the knowledge of the person making it " (*Dickson* v. *Reuters Telegram Co., Ltd.*, L. R. 1877, 3 C. P. Div. 1), or as said elsewhere " we have to take it as settled that there is no general duty to use any care whatever in making statements in the way of business or otherwise, on which other persons are likely to act." (9 Law Quarterly Review, 292.) And the same principle has been applied in equity (*Low* v. *Bouverie*, L. R. 1891, 3 Ch. 82) although it had been supposed that here, at least, there was often a remedy for negligent misrepresentation.

These cases have not been without criticism. The denial, under all circumstances, of relief because of the negligently spoken or written word, is, it is said, a refusal to enforce what conscience, fair dealing and the usages of business require. The tendency of the American courts has been towards a more liberal conclusion. The searcher of a title employed by one, who delivers his abstract to another to induce action on the faith of it, must exercise care. (*Dickle* v. *Abstract Co.*, 89 Tenn. 431.) So must a physician who assures a wife that she may safely treat the infected wound of her husband (*Edwards* v. *Lamb*, 69 N. H. 599), or hired by another, examines a patient and states the result of his diagnosis. (*Harriott* v. *Plimpton*, 166 Mass. 585.) So of a telegraph company, stating that a telegram was delivered when in

fact it was not. (*Laudie* v. *Telegraph Co.*, 126 N. C. 431.) And the liability of such a company to the receiver for the erroneous transcription of a telegram has also sometimes been placed on this ground. (*Bailey & Co.* v. *Western Union Tel. Co.*, 227 Penn. St. 522.)

In New York we are already committed to the American as distinguished from the English rule. In some cases a negligent statement may be the basis for a recovery of damages. A reference is made to the question in *Carpenter* v. *Blake* (75 N. Y. 12). We intimated that a physician would be liable for negligent advice given to a patient after his discharge, but this suggestion was not decisive of the point we now consider. In *Bush Terminal Co.* v. *Insurance Co.* (cited above), however, we come to the parting of the way. A bailee, negligently misstating to the bailor where his goods are stored, knowing the inquiry is made for insurance purposes, is liable for the resulting loss. Then came *Glanzer* v. *Shepard* (233 N. Y. 236). A public weigher, hired by the seller to weigh goods, realizing that the buyer would rely on his certificate in paying therefor, was held liable for erroneous statements contained therein.

It is true that in both cases the decisive principle was somewhat obscured by other facts that appeared in the record before us. In the first a theory of contract was also referred to in the court below. In the second a like theory was mentioned, but the recovery was placed on the ground of negligence. The weigher was to weigh and certify. There was so far as appeared no negligence in the act of weighing. The negligence was inferred from the issuance of a false certificate. That was the wrong for which a recovery was allowed. " Diligence was owing, not only to him who ordered, but to him also who relied."

Obviously, however, the rule we have adopted has its limits. Not every casual response, not every idle word, however damaging the result, gives rise to a cause of

22

action.  Chancellor KENT might not be held responsible for an error in one of his " Battery opinions." As he himself said, they cost nothing and bind no one. Liability in such cases arises only where there is a duty, if one speaks at all, to give the correct information.  And that involves many considerations.  There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property.  Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care. (*Jaillet* v. *Cashman*, 235 N. Y. 511.)  An inquiry made of a stranger is one thing; of a person with whom the inquirer has entered or is about to enter into a contract concerning the goods which are or are to be its subject is another.  Even here the inquiry must be made as the basis of independent action.  We do not touch the doctrine of *caveat emptor*.  But in a proper case we hold that words negligently spoken may justify the recovery of the proximate damages caused by faith in their accuracy.

When such a relationship as we have referred to exists may not be precisely defined.  All that may be stated is the general rule.  In view of the complexity of modern business each case must be decided on the peculiar facts presented.  The same thing is true, however, in the usual action for personal injuries.  There whether negligence exists depends upon the relations of the parties, the thing done or neglected, its natural consequences, and many other considerations.  No hard and fast line may be drawn.

Here, as we view the facts, the duty to speak with care if it spoke at all, rested on the defendant.  We

have it about to become the bailee of the plaintiff's goods; the inquiry made by him with whom it was dealing for the purpose as it knew of obtaining insurance; the realization that the information it gave was to be relied upon and that if false the insurance obtained would be worthless. We have an inquiry such as might be expected in the usual course of business made of one who alone knew the truth. We have a negligent answer, untrue in fact, actual reliance upon it, and resulting proximate loss. True the answer was not given to serve the purposes of the defendant itself. This we regard as immaterial.

If there was negligence justifying a recovery we cannot hold the plaintiff guilty of contributory negligence as a matter of law. Whether or not it should have discovered the error by an inspection of the bill of lading when it received it was a question of fact.

We have confined our decision to the precise issues before us. We do not consider what might be the result under other conditions or whether a recovery might not be had upon other grounds. If the testimony is to be interpreted as the defendant claims it should be; if the statement as to the dock was a mere expression of present intention, still it might be claimed that under the circumstances due care required notice if such intention was subsequently changed. Or under either interpretation it might be said some principle of estoppel might be applied. Or if we are to take the wider view of contracts sometimes proposed, then that a recovery on this theory is permissible. All this we pass by. Such questions we will consider when they are required by the decision we must reach. Until then we express no opinion.

The judgment appealed from should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE and LEHMAN, JJ., concur; KELLOGG, J., absent.

Judgment affirmed.