JOHN J. SCANLON, as Administrator of the Estate of JOHN J. SCANLON, Deceased, Respondent, *v.* FIRST NATIONAL BANK OF MEXICO, NEW YORK, Appellant.

(Argued June 19, 1928; decided July 19, 1928.)

*Harry C. Mizen* and *Francis E. Cullen* for appellant. The defendant owed no duty to the plaintiff to stop payment of the plaintiff's check. (*Prowinsky* v. *2nd Nat. Bank*, 265 Fed. Rep. 1003; *Hennessey Bros. & Evans Co.* v. *Memphis Nat. Bank*, 129 Fed. Rep. 557; *Thomas* v. *International Bank*, 46 Ill. App. 461; *Franklin Bank* v. *Byram*, 39 Me. 489; 1 Morse on Banks & Banking, § 360; Brady on Bank Checks [2d ed.], 1414, § 255.)

*Joseph B. Murphy* and *Charles N. Bulger* for respondent. The defendant is liable for the damages sustained by the plaintiff. (*Bown Bros., Inc.,* v. *Merchants' Bank*, 214 App. Div. 693; 243 N. Y. 366; *International Products Co.* v. *Erie R. R. Co.*, 244 N. Y. 331; *Richard* v. *Credit Suisse*, 242 N. Y. 346; *Martin* v. *Home Bank*, 160 N. Y. 190; *Shipsey* v. *Bowery Nat. Bank*, 59 N. Y. 485; *Rankin* v. *Colonial Banks*, 31 Misc. Rep. 227; 60 App. Div. 629; *Irving Bank* v. *Wetherall*, 36 N. Y. 335.)

KELLOGG, J. The plaintiff, John J. Scanlon, was the son of John J. Scanlon, of whose estate he is now the administrator. He conducted for his father a certain

transaction in the purchase and sale of sugar from which a loss apparently resulted. The defendant bank was the recipient of a letter of credit, furnished for the purpose of financing the transaction, by a customer of John J. Scanlon, to whom the sugar purchased by Scanlon had been sold. It is said that the defendant was negligent in failing to inform Scanlon of the expiry date of the letter of credit, and that, as a result, the sugar could not be delivered to the customer within the time limited, to the damage of Scanlon. This action is brought to recover the loss alleged to have been sustained.

On June 2, 1920, John J. Scanlon, Jr., at Oswego, New York, received from George B. Harris and Company, commission merchants of Syracuse, New York, an order for sixty thousand pounds of granulated sugar at 29 cents a pound, on board cars at New York city. He immediately communicated with the Paragon Sales Corporation of New York and obtained an offer of the sugar, in the amount ordered, at 28 cents a pound, on cars in New York. Scanlon at once informed Sweetland, the vice-president of the defendant, of the negotiations which he had conducted. Sweetland said to him: " How can you handle this, you haven't any money, you are pretty well tied up here, now." Scanlon said: "I will arrange with Mr. Harris and Mr. Harris will send the letter of credit, he will have the City Bank Trust Company call you and tell you he is sending the letter of credit of $17,400." Scanlon telephoned an acceptance of the order of Harris and Company and made the necessary arrangements with Harris and the City Bank Trust Company of Syracuse, for a letter of credit. He then telephoned an order for the sugar to the Paragon Sales Corporation. Later in the day, on June 2d, Sweetland informed Scanlon that the City Bank Trust Company had telephoned that the letter of credit would be forwarded immediately. On the following morning J. J. Scanlon, Jr., made out a check for $16,800, payable to the Paragon Sales Cor-

poration, and signed his father's name thereto by " J. J. S. Jr." He then wrote a letter to the National Bank of Commerce of New York, advising them of the inclosure of the check, and stating that the check was to be paid to the Paragon Company upon the delivery of a bill of lading showing a shipment of sixty thousand pounds of sugar to the order of J. J. Scanlon, at Syracuse, " notify Geo. B. Harris & Co. Syracuse, N. Y." The check drawn by Scanlon was certified by Sweetland as vice-president of the defendant. Both letter and check were that morning mailed to the National Bank of Commerce. Later in the day Sweetland informed Scanlon that his bank had received the letter of credit from the Syracuse bank. The letter of credit received was dated June 2d, 1920, and recited that it was drawn at the request and for the account of Geo. B. Harris & Co. of Syracuse, N. Y. It authorized the defendant to pay J. J. Scanlon the sum of $17,400 upon the surrender of a bill of lading, representing the shipment of sixty thousand pounds of granulated sugar, drawn or indorsed to the order of the City Bank Trust Company, Syracuse, N. Y. It provided that all drafts drawn in accordance with its terms would be honored by the City Bank Trust Company " if drawn and negotiated prior to June 10, 1920." On June 9th, 1920, no bills of lading had been delivered to the defendant bank by J. J. Scanlon. Accordingly, the defendant returned the letter of credit, which by its terms was to expire on that day, to the City Bank Trust Company. On June 14th the Paragon Sales Corporation shipped the sugar and received a bill of lading issued to Scanlon, as previously requested by him. On the same day it delivered the bill of lading to the National Bank of Commerce, and received the Scanlon certified check for $16,800. On June 15th, 1920, Sweetland told Scanlon that the letter of credit had been returned to the Syracuse bank. Scanlon professed ignorance of the fact that the letter contained terms providing for its expiration before

June 10th. He immediately assumed that Harris and Company would refuse to receive the sugar and attempted to cancel the purchase made from the Paragon Sales Corporation without success. Scanlon then discounted notes with the defendant bank to provide moneys to meet the outstanding certified check which was afterwards presented to and cashed by the defendant. The sugar was placed in a warehouse by Scanlon, and afterwards sold at a loss, which the plaintiff now seeks to recover.

The City Bank Trust Company, by its letter of credit, agreed to honor a draft, drawn by J. J. Scanlon, if discounted or purchased by the defendant, provided the draft were accompanied by a bill of lading, drawn or indorsed to the order of the City Bank Trust Company, showing the shipment of sixty thousand pounds of granulated sugar. When a bank buys or discounts a draft relating to a letter of credit it owes no duty to the drawee or the drawee's customer. No contractual relation exists between it and the drawee who has delivered to it the letter of credit. It may buy or refuse to buy as it chooses. It may buy after the passage of the expiry date of the letter without violating any duty resting in contract or otherwise. (*Courteen Seed Co.* v. *Hong Kong & S. B. Co.*, 245 N. Y. 377.) Equally must it be true that it owes no contractual duty toward the person for whose benefit the letter is written to discount or purchase any draft drawn against the credit. No relationship of agent and principal, or of trustee and *cestui*, between the receiving bank and the beneficiary of the letter is established. In this instance, the defendant, before the required bill of lading for the sugar had been delivered to it, and, therefore, before the letter of credit had become effective, loaned to Scanlon, by certifying his check, its own credit, so that the sugar might be purchased. It thus clearly became, not the agent, but the creditor of Scanlon.

In certain instances there is liability for information negligently imparted. (*Courteen Seed Co.* v. *Hong Kong & S. B. Co., supra; International Products Co.* v. *Erie R. R. Co.*, 244 N. Y. 331.) In the former case Judge POUND, referring to cases where liability has been found to exist, said: " They all rest on the principle that negligent words are not actionable unless they are uttered directly, with knowledge or notice that they will be acted on, to one to whom the speaker is bound by some relation of duty, arising out of public calling, contract or otherwise, to act with care if he acts at all." In the latter case Judge ANDREWS said: " There must be knowledge or its equivalent that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care." It may be doubted whether the relationship between a bank, which has received a letter of credit, and the beneficiary of the letter, is such that for information erroneously imparted by the former to the latter, concerning the terms of the credit, liability is cast upon the former. The question in this instance, however, is not was the defendant under a duty to make certain that information imparted by it was correct, but rather was it under a duty to impart any information whatsoever? Certainly the defendant was not aware that the information was " desired for a serious purpose " or that Scanlon intended to " rely and act upon " information to be given. Scanlon did not ask for information. Scanlon, not the defendant, negotiated with Harris and Company and the City Bank Trust Company for the letter of credit. The letter was procured by Scanlon and forwarded at his request to the

defendant. Presumably he knew of the terms of a letter of credit for which he had negotiated. Presumably its terms were amply sufficient for the protection of the transaction in which he was to engage. The record is barren of any proof to indicate that the defendant knew that Scanlon was ignorant of the expiry date of the letter. Therefore, we are clear that no duty rested upon the defendant to volunteer information upon that point.

There is another reason why the plaintiff should fail. It does not appear that the loss complained of was proximately caused by the failure of the defendant to give information of the expiry date of the letter. Before the letter had been received by the defendant Scanlon had already bought the sugar from the Paragon Sales Corporation and had already sold it to Harris and Company. Scanlon testified that, on June 2d, after talking with Sweetland, he completed his arrangements with the Paragon Sales Corporation and Harris and Company. He stated that he had no contracts in writing with either party. He was asked: " The contracts were all made over the telephone, were they? " and his answer was " Yes." He was, therefore, already bound in honor, if not in law, to receive deliveries from the Paragon Sales Corporation, prior to the time when the defendant received the letter of credit and became aware of its terms. It does not appear that disclosure of its terms, promptly made, would have enabled Scanlon to procure deliveries of the sugar before the expiry date. Otherwise, disclosure would have enabled him, not to avoid entering into a contract of purchase, but to break a contract already made before the sugar was delivered, and thus to render himself immune from liability, since the contract was not in writing. We do not think that the performance of an oral contract honestly entered into can be the basis of a recovery of damages, on the part of the person performing, against a person because of whose negligence it became impossible to breach the

contract with impunity. Again, it nowhere appears that Scanlon, having received delivery of the sugar, could not have disposed of it to Harris and Company, who had contracted to buy it. No effort was made by Scanlon to procure Harris and Company to accept delivery. That company did in fact never refuse to accept delivery, for delivery was never offered. We cannot assume that an offer would have met with refusal. This is especially true for the reason that the price of granulated sugar rose, rather than fell, after the delivery to Scanlon, and remained for an appreciable period above the price at which Scanlon had sold to Harris and Company.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all the courts.

CARDOZO, Ch. J., POUND, ANDREWS and O'BRIEN, JJ., concur; LEHMAN, J., concurs on the ground first stated in the opinion; CRANE, J., not sitting.

Judgments reversed etc.