CHARLES V. BOB and Another, Doing Business under the Firm Name and Style of CHARLES V. BOB & Co., Plaintiffs, v. CLAUDE NEON LIGHTS, INC., and Others, Defendants.[*]

Supreme Court, New York County, March 11, 1930.

*Freudenberg & Mattuck* [*Louis Freudenberg* of counsel], for the plaintiffs.

*Merrill, Rogers, Gifford & Woody* [*Julius Henry Cohen, A. P. W. Seaman, Charles L. Woody, Theodore B. Richter* and *Burton A. Zorn* of counsel], for the defendants.

BIJUR, J. This is a motion to vacate an attachment on the original papers. Defendants object to the consideration of additional affidavits and an amended complaint, claiming that the defects in the original papers are jurisdictional, and, therefore, not open to supplemental correction. They rely upon the authority of *Grassi* v. *La Sociedad Bancaria Del Chimborazo* (213 App. Div. 629, 635); *Wade* v. *Gates Rubber Co.* (205 id. 17, 20), and *Dexter & Carpenter, Inc.,* v. *Lake & Export Coal Corporation* (196 id. 766,

* Affd., 129 App. Div. 727.

769). Plaintiffs, on the other hand, point to *Russell* v. *Porter* (236 N. Y. 619) as deciding, or at least intimating, the contrary. The latter case, however, involved a warrant of arrest, and it may be that the rule adopted by the Appellate Division relating solely to attachments still survives. As, however, the original moving papers were palpably defective in many respects claimed by defendants, and as the latter's contention is in large part that these papers themselves disproved the claimed falsity of defendants' statements complained of, and as the amended complaint and plaintiffs' supplemental affidavit do not, in my opinion, avoid these criticisms, I have concluded to decide the motion on the entire record before me. The circumstances out of which this controversy has arisen are disclosed to be the following: On November 25, 1929, there appeared in the press over the name of plaintiffs an advertisement offering for sale shares of stock of the Federal Neon System, Inc. It announced the formation of the corporation and its intended acquisition of certain assets of the Federal Electric Company and of the control of two other companies. It stated that the companies to be " combined " would have certain sales, manufacturing and servicing facilities in all important cities; summarizes the consolidated earnings of the Federal Electric Company and its subsidiaries, and gives certain estimates of future earnings of both the Federal Electric Company and of the new corporation. Under the head of " Officers and Directors of Federal Neon System, Inc.," occurs the phrase " The permanent directorate of the parent and subsidiary companies is to be chosen in part from the present directors of the ' consolidated companies ' as follows; " and under a subhead of Claude Neon Federal Company the names of defendants Hollingsworth and Kester as president and vice-president respectively of the corporate defendant.

On the following day the defendants published a statement addressed to the public and to the stockholders of defendant " with regard to the published statements made over the name of Charles V. Bob & Co. relating to the Federal Neon System, Inc." Four paragraphs of plaintiffs' statement are involved. They are as follows: (1) Claude Neon Lights, Inc., is not a party to nor has it authorized the association of its name or of any of its officers in any way whatsoever either in the plan set forth in said notices or in flotation of the shares of stock of said Federal Neon System. (3) The litigation which Claude Neon Lights, Inc., has brought against the Federal Electric Company, George L. Johnson, and Rainbow Luminous Products, Inc., is still pending. In this litigation is involved the proposed transfer of two-thirds of the stock

in the Claude Neon Federal Company to said Johnson or to said Rainbow Luminous Products, Inc. *There has been no settlement or compromise of this litigation.* (5) Claude Neon Lights, Inc., and its officers desire to disassociate themselves from any representation in said statements, implied or otherwise, concerning the earnings or the right of Rainbow Luminous Products, Inc., to consolidate with Claude Neon Federal Company. (6) The contract between Claude Neon Lights, Inc., and the Federal Electric Company prohibits the amalgamation or consolidation of the Claude Neon Federal Company with any other company without the consent of more than seventy-five per cent of the outstanding common stock of the Claude Neon Federal Company. The ownership of shares of Claude Neon Federal Company held by Claude Neon Lights, Inc., is sufficient to prevent any such amalgamation or consolidation. Although the truth of defendants' statements in the 1st paragraph, that they were not parties to, nor had they authorized the association of their names with, plaintiffs' plan, is not challenged, plaintiffs make the claim that their advertisement did not associate defendants with the statements concerning the earnings, mentioned in the 5th paragraph. It seems to me that that was the very meaning and intent of the announcement. I think, indeed, it thereupon became the privilege, if it was not the positive duty, of defendants to announce to the corporate defendant's stockholders and to the public their dissociation from the advertised scheme.

Plaintiffs' chief contentions are, in substance, that the statement in the 3d clause that the litigation there referred to was still pending, and the *intimation,* claimed to be found by plaintiffs in the 6th paragraph, that the advertised scheme *was* an amalgamation or consolidation, were both false. The claim that the statement of the pendency of the litigation was false is based on plaintiffs' allegation that a preliminary injunction sought by the present defendants against transfer of certain of the stock involved, had been denied, and that the denial had been affirmed in the Appellate Division, but without opinion. Plaintiffs allege in their moving papers that, because of this decision, the question " was no longer in issue and had been fully determined." It is hardly necessary to discuss plaintiffs' contention in this regard, as it is elementary that the denial of the preliminary injunction in and of itself did not and could not have terminated the litigation. Moreover, the fact now appears that since that denial plaintiffs there have upon due application been permitted to serve an amended complaint.

I must confess that I find it difficult to follow plaintiffs' argu-

ment aimed at proving that the statements in paragraph 6 of the defendants' advertisement are false. It seems to be based on the claim that defendants intimated by "innuendo" that plaintiffs' advertised scheme was an amalgamation or a consolidation. It is clear that plaintiffs announced that the companies were to be "combined," and called them the "consolidated companies." If these statements are to be regarded as false, it is not easy to understand how plaintiffs can complain that defendants accepted them as true. If, however, they were mere statements of a legal conclusion, then defendants can hardly be charged with false statements if they adopted a legal opinion identical with that of plaintiffs. There are, however, more determinative considerations for granting the motion to vacate this attachment, even if we assume that by some process of reasoning the defendants' statements may be regarded as false or incorrect.

*First*, the moving papers set out no *evidence, prima facie* or otherwise, of any damages suffered by plaintiffs, and certainly none upon which to base a conclusion as to the amount of such damages. Such evidence is essential to sustain an attachment. (*Jonasson* v. *Herrick*, 126 App. Div. 827; *Calmon Asbestos & Rubber Works of America* v. *Asbest-Und-Gummiwerke*, 141 id. 198, 200; *Kelderhouse* v. *McGarry*, 82 Misc. 365; affd., 167 App. Div. 956; *Willson* v. *Lloyd*, 210 id. 210.) Contracts made by plaintiffs with certain corporations are spoken of in general terms, but no copies are annexed so that the court may judge what plaintiffs' rights or obligations thereunder may be. Subscriptions to the stock of the new corporation are similarly mentioned, again without details or annexation of copies of the instruments so that their extent or binding character may be determined. Further, the gist of the entire claim, so far as damages are concerned, is the cancellation of these subscriptions, but it is not even recited whether the cancellations were written or oral or what the phraseology of such cancellations may have been. Finally, it is said that these cancellations were the result of defendants' false statements, without a scintilla of evidence that the latter were indeed the cause.

*Second*, plaintiffs in their brief cite as their chief reliance the case of *Rice* v. *Manley* (66 N. Y. 82). The opinions in that case and in *Benton* v. *Pratt* (2 Wend. 385), in the very passages quoted, stress fraud as a necessary element to sustain the cause of action. Although the amended complaint charges defendant with having made the statements complained of " deliberately, maliciously and fraudulently," it appears from those cases and others that by the "fraud" thus spoken of it is intended to designate a false representation *known by the defendant to be untrue*. In other words,

scienter or its legal equivalent is indispensable. In England that consideration is carried to its extreme application in the well-known case of *Derry* v. *Peek* (L. R. 14 App. Cas. 337 [1889]). The American doctrine is not quite so broad as explained in *International Products Company* v. *Erie Railroad Company* (244 N. Y. 331, 336, *et seq.*), and applied in *Courteen Seed Company* v. *Hong Kong & Shanghai Banking Corporation* (245 id. 377). It seems to demand accuracy of statement, regardless of scienter or bad faith, but only in cases where there exists a duty on the part of the defendant toward the plaintiff to speak the exact truth, leaving the English rule otherwise unaffected.

It can hardly be claimed that defendants were under any duty to plaintiffs. Indeed, plaintiffs' original misstatement importing defendants' possible or expected participation in plaintiffs' plan invited, if it did not compel, an appropriate repudiation by defendants. But the repudiation was not addressed to plaintiffs, nor, as I have just said, can there be inferred from any of the circumstances of this case any duty on the part of the defendants to the plaintiffs. Moreover, I find no evidence in plaintiffs' moving papers to prove or even suggest that defendants had knowledge or a reasonable ground to believe that their statements were false. I doubt also whether scienter, under the circumstances of this case, can be predicated on what is substantially the expression of an opinion on a legal question. In view of my conclusions, I deem it unnecessary to consider other points made by defendant.

Motion to vacate attachment granted. Settle order on one day's notice.