Brewster, J.
Plaintiff, a painter in the employ of a firm ol contracting painters, sustained personal injuries occasioned by a fall when a canopy or marquee, upon which he was standing in the course of his work, broke away from its fastenings and collapsed. The marquee was attached to the front of defendants ’ dwelling house which plaintiff’s employers had contracted to paint. Plaintiff has had a recovery for his injuries upon the claim that defendants were liable in negligence because he overheard one of them speak carelessly to his employers relative to the safety of the marquee as a place from which to work.
The complaint set up two causes, one in negligence, the other in nuisance. The latter was dismissed at trial. As to the cause in negligence, the nearest approach which the pleadings make to the cause submitted to the jury consists of charges that the plaintiff was .upon the marquee at the invitation, request, and with the knowledge of the defendants, and that they failed to give him any notice of its unsafe condition. This, in effect, charges the defendants with negligence by failing to speak, rather than with negligence by spoken words. The pleadings charge no statements by defendants as to the safety of the marquee, yet they were the gist of the cause of action sent to the jury, and there was no motion to conform the pleadings to the proof. The evidence as to Cerasoli’s statements was receive^ over defendants’ objection to which exceptions were taken, and even though the stated grounds of the objections were invalid, it seems to me this question was raised and saved by the motions to dismiss, the exception to their denial and the exceptions to the charge. The case went to the jury upon a question of negligence that was nowhere alleged, either in the pleadings or the bill of particulars. The complaint is long, even verbose, in detailing the specifications of the negligence sued upon, but no mention is made of the defendants’ statements or representations which constituted the cause of action upon which a recovery has been had under the recent doctrine as to negligence by language.
The sine qua non of the cause submitted to the jury consisted of the testimony of the plaintiff and the two members of the contracting firm. The plaintiff gave his recollection of what he overheard the defendant John Cerasoli say in a “ discussion ” *47 had with the contractors, and which had taken place about a week or so before his accident, thus placing it around June 12th, or about a week later than as related by the contractors. He said: “ A Mr. Cerasoli told the Billetts Brothers [the contractors] that they could work from the marquee because they worked from there before when they painted the house, and that they used the marquee for hanging storm windows to the window edges over the marquee. ’ ’
Frank Billetts, one of the contractors, testified to the foregoing as follows: “ A. * * * Mr. Cerasoli said that it was [safe], men had previously done work, had been upon the canopy for hanging either storm windows or screens from the canopy, to his knowledge he believed it was safe (Italics supplied.)
Anthony J. Billetts, the other of the contracting firm, gave his testimony about the matter as follows: “A. * * * I asked John [Cerasoli] about the canopy, John says, ‘ Yes, it is all right, we put up storm windows on it,’ and he said, ‘ The man used it before when they painted the house, it held then, it ought to hold you.’ ” (Italics supplied.) All that can be fairly charged against the defendant in his thus reported statements is that in the discussion in question he was asked for and merely expressed his opinion relative to the safety of the marquee and gave certain history about it which, so far as shown, was a truthful recital. In any reasonable interpretation and view of the above testimony may it be said to constitute evidence of actionable negligence by the means of spoken words? Considered in light most favorable to plaintiff, what was it, in substance, and as thus variously reported, that Cerasoli said? I submit it was this: That the contractors could use the marquee to work from — that it had been so used before; that the canopy was safe, for men had previously worked from it and he believed it was safe; that it had been used before in painting and putting on storm windows — “it held then, it ought to hold you. ’ ’ Even though these statements were made by said defendant to the contractors, and even though the plaintiff overheard them, I do not see how they may be said to have constituted actionable negligence. The evidence depicts the statement of a requested opinion and the grounds therefor, instead of the representation or assurance of a fact which the speaker presumed to know. It does not show Cerasoli to have been under a duty so that, if he spoke at all, he was under liability to inform correctly as to what was unknown. Further, said defendant was talking to his contractors who had exclusive charge of the manner and means of doing the work, the statements were not addressed to the *48 plaintiff, and it appears, affirmatively, that plaintiff’s use of the marquee which caused his injury, was in violation of the contractors’ orders, as regards work upon the front of the building. Anthony J. Billetts said further, on direct: “ I told the men then, we were all there present, [that] I didn’t want anybody to touch that job [front of the building] until I was present. I had another job I had to go out on that was rush and that when I came back they would be all through on the three sides, that is, the two sides and the back of the house and I would be there to tackle the front of the house. On * * * the date of the accident, I had about two hours more to go to complete the job that I was working on. My brother comes in about noon hour, he says, ‘ The job is coming along good.’ He said, ‘ I am coming in after dinner.’ By the way, he was living with me at 46 Partition Street. I says, ‘ Well, I am not quitting my job now. We only have about two hours to go. I want to finish this so we can get back up on the job and work that out and get out of there/ because I had another job they were hollering to get me on. My brother left where I was working, he went home. He wasn’t gone, I will say five minutes— ” when, evidently, the accident happened. (Italics supplied.)
The surrounding circumstances such as the occasion which caused Cerasoli to speak, his relationship to the parties, the nature of the work involved, and the knowledge and experience of those concerned with it and other matters of common knowledge, pertaining to the situation, all this, it seems to me, is to be considered in determining whether any question as to actionable negligence may be said to have arisen on account of that defendant’s language. Here, we have a simple householder who had by written agreement engaged a firm of contracting painters to paint his house, inside and out, including the woodwork on its front. In saying whatever it is shown he did say to them, this picture is to be borne in mind. The matter of reaching the heights to paint the front of the building — as to that, of course, the contractors were independent and in complete charge, and as to that they had more experience and knowledge than the defendant and this, of course, applies to their employees. I think it may be said that the appearance of the marquee disclaimed its purpose as having been built or maintained to support such a load as plaintiff helped to put upon it and which caused the accident. In expressing his opinion regarding the matter and giving truthful history of what had happened in the past, the fact that the painting contractors and their employees had had *49 much more extensive experience and possessed more knowledge than Oerasoli, this, I deem a matter of great importance in assessing the blameworthiness of whatever Oerasoli is shown to have said and in characterizing the duty under which he spoke. That the fastenings of the supporting chains to the marquee were embedded in wooden framework and concealed by a tin roof covering, and, therefore, were not visible and available to ordinary householder’s inspection — all this was openly évident to all concerned and Cerasoli’s mere expression of opinion as relating to the hidden condition, based upon truly recited past experience, such I feel can not be classed as a tort. Under the circumstances shown, may Oerasoli, as an ordinarily prudent householder, be held in negligence because, in expressing his opinion as to the weight bearing strength of the marquee in his discussion with his contractors, he failed to anticipate or foresee that one of their employees (the plaintiff), would overhear what he said and in violation of his employer’s instructions, would go to work upon it, to his damage, in reliance upon the correctness of the opinion he heard the defendant express? I think not.
In International Products Co. v. Erie R. R. Co. (244 N. Y. 331, 335) the “ vexed question of liability for negligent language ” receives extended treatment. The American departure from the English rule is marked and the New York commitment to the newer doctrine is registered. In Nichols v. Clark, MacMullen & Riley, Inc. (261 N. Y. 118, 125), Judge Cbane referred to it as “ the recent doctrine of negligence in the spoken word ”. In the International case (supra), its basic elements are stated, but within the caution of express generality. It is pointed out (pp. 337-338), that:“ Not every casual response, not every idle word, however damaging the result, gives rise to a’cause oE action ”, and in personal injury cases, it is said that: “ Whether negligence exists depends upon the relations of the parties, the thing done or neglected, its natural consequences, and many other considerations. No hard and fast line may be drawn.”
Within the coverage of the general rule what then are the essential elements? In the International case (p. 338), they are given but it is to be noted that preceding their catalog is the pronouncement that liability In the Matter of the Accounting of Eugene P. Summerson et al., as Trustees under the Will of Robert G. Reese, Deceased. Louis L. Allen, as Executor and Trustee under the Will of J. Theus Munds, Deceased, et al., Appellants; Eugene P. Summerson et al., as Trustees under the Will of Robert G. Reese, Deceased, et al., Respondents in such cases arises only where there is a duty, if one speaks at all, to give the correct information.” Among the " many considerations ’ ’ said to be involved, are: Knowledge that the information desired is sought for a serious purpose; that he to whom it is given intends to rely and act upon it; that if it is false or erroneous, he who so relies and acts will he
*50 injured thereby, and the relationship of the parties arising from contract or otherwise must he such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care. The rule is negatively stated in Courteen Seed Co. v. Hong Kong & Shanghai Banking Co. (245 N. Y. 377, 381), to the effect that negligent words are not actionable unless they are uttered ‘ ‘ directly ’ ’ to one within the care of the speaker, and with knowledge or- notice that he will act in reliance upon them. These authorities make it clear to me that the genesis of liability is in the measure of the duty incumbent upon the speaker when he speaks. Under these rules I fail to see how the relationship of the plaintiff and the defendants was such that in morals and good conscience the former had any right to rely on what he is shown to have overhead Cerasoli say, as information of a fact for the guidance of his conduct which brought him injury, or how plaintiff can be exonerated from contributory negligence as a matter of law. I cannot see how Panica v. New York, N. H. & H. R. R. Co. (295 N. Y. 756) helps the plaintiff because in that case the duty under which defendants ’ trainman spoke was far different, and arose from circumstances well within the declared rules and wholly incomparable to those in the case at bar.
I favor a reversal and a dismissal of the complaint.