UNITED STATES of America, Plaintiff-Appellee,

v.

GARCIA & DIAZ, INC., Defendant-Appellant.

No. 272, Docket 26466.

United States Court of Appeals Second Circuit.

Argued Feb. 24, 1961.

Decided May 24, 1961.

Morton Hollander, Attorney, Department of Justice, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Arnold R. Petralia, Attorney, Department of Justice, Washington, D. C., on the brief), for plaintiff-appellee.

Sheldon A. Vogel, New York City (Bigham, Englar, Jones & Houston, Donald F. Connors, New York City, on the brief), for defendant-appellant.

Before HINCKS and MOORE, Circuit Judges, and BRENNAN, District Judge.*

* Sitting by designation, U. S. District Judge, Northern District of New York.

244

MOORE, Circuit Judge.

Defendant appeals from a judgment in favor of the United States for $5,828.35 with interest from December, 1944, entered after a trial to the court.

This action, commenced on December 30, 1957, was brought by the United States pursuant to 28 U.S.C.A. § 1345 to recover an alleged overpayment of freight charges, for the ocean transportation of 823.8214 tons of corned beef from Buenos Aires to New Orleans in July, 1944, on the S.S. General San Martin, a vessel owned by Dormat, a foreign corporation.

The defendant was the agent of Dormat in the United States for the purpose of filling the needs of the ships of Dormat when they arrived in the United States; and also to collect freight moneys owing to Dormat and to remit them to Dormat. On the trial it was stipulated that the defendant did not participate in the negotiations for the contract of carriage involved in this case, including the determination of the freight rates therefor. These negotiations took place in Buenos Aires between the Government and Dormat. The defendant did not have any knowledge as to how the freight rates were arrived at.

On July 13, 1944, the defendant, as agent for Dormat, presented to the Government freight bills for collection, which bills claimed freight based on a rate of $19.58 a long ton for a total of $23,206.22. In these bills, the defendant certified as follows: "I certify that the above account is correct and just; that the services have been rendered as stated; that payment thereof has not been received, and that the rates charged were not in excess of the lowest net rates available for the Government based on tariffs effective at date of service." These charges were paid in December, 1944.

At the time that the defendant made the above certification, the River Plate/United States Freight Conference Tariff No. 4 (applying to comparable voyages), of which conference Dormat was not a member, provided for a transportation rate for such meat of $14.50 a long ton.

On November 12, 1946, and December 5, 1947, the Government demanded that the defendant refund the alleged overpayment made in December, 1944, which amounted to $5,828.35. On March 10, 1952, the General Accounting Office forwarded to the defendant a "Certificate of Indebtedness" demanding repayment.

In its complaint the Government sued the defendant as a carrier for refund of the alleged overpayments. However, on trial both parties stipulated that the defendant was an agent only. During the trial, the Government discarded its contract theory and relied upon negligent misrepresentation. Accordingly, it moved to conform the pleadings to the proof in support of this theory. The case thus was based upon the defendant's alleged negligence in furnishing to the Government an inaccurate certificate upon which the Government relied. The District Court awarded the Government a judgment based on the theory that the defendant had negligently misrepresented the facts when it certified that the rates were not in excess of the lowest net rates available to the Government, based on tariffs effective at the date of service. Because of this change of theory of liability, it becomes necessary to analyze and redefine the issue.

Appellant correctly argues that this action is not to be regarded as against a carrier for the improper exaction of freight charges for the carriage of Government property. As a result, the principles expounded in United States v. New York, New Haven & Hartford R. R. Co., 1957, 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247, are not in point. Furthermore, because the material facts are not in dispute, reliance need not be placed upon the legal consequences of the burden of going forward, the burden of proof or the "clearly erroneous" (Rule 52(a), F.R.Civ.P. 28 U.S.C.A.) doctrines. Equally immaterial is the argument con-

cerning the defendant's agency for a disclosed principal because liability is sought to be imposed against the defendant for its own negligent misrepresentation.

■ With these issues eliminated, what remains? Two facts are controlling, namely, the defendant's representation that the rates charged were not in excess of the lowest net rates available for the Government, based on tariffs effective at the rate of service, and the existence of the rates listed in the River Plate/United States Freight Conference Tariff No. 4 which provided for a rate of $14.50 a long ton in contrast to the $19.58 charged. This being so, it matters little which party went forward with its proof. Nor does burden of proof as a legal concept cast its weight upon the scales with sufficient force to overcome reasonable interpretation of the clause in question.

Appellant contends that the word "available" should be given critical significance and that the trial court, in effect, shifted the burden of proof to appellant to establish that Conference rate ships were not available. To hold otherwise, says appellant, is to delete the word "available" from the certificate. However, to give it the construction urged by appellant would require a decision that the ship could charge any rate it chose because it was the only ship physically present at the dock at the time of loading and, hence, the only ship then available. A fair reading of the certificate will not justify such a conclusion. The very purpose of the clause was to invite comparison with other rates; otherwise, the clause would have been meaningless. If the rate charged by the only ship available is to be compared only with its own rate, there could never be a lower—much less a lowest—rate.

The issue here is not whether there were conference ships available on the particular date, although there was proof that there were some 26 conference ship sailings between Buenos Aires and New Orleans during a period both be-

fore and after the date involved. Nor is it determinative that Dormat was not a member of the Conference. The Conference rates were "tariffs effective at the date of service" and the representation as to the actual rates charged were by reference to be "based" on tariffs, then in effect. These tariffs served as a standard against which the rates on the S.S. General San Martin were to be compared.

■ The theory of liability for the defendant's act in signing the certification rests upon its misrepresentation in its certificate. Its act need not have been fraudulent or intentional. Appellant was in a business which served a ship owner and was charged with the collection of freight rates for the owner. In such a business it must assume the responsibility of being familiar with, or having access to, information pertaining to such rates as might be in effect at the time. If it failed to make a correct representation of the facts whether caused by failure properly to investigate available rates or by negligent misstatement and the government relied upon the certificate in making its payment, the law imposes liability.

The applicable principles are well summarized in 1 Harper & James, The Law of Torts, p. 551, "Unqualified statements imply certainty. * * * Reliance upon the existence of the facts thus stated, or upon the adequate factual basis for the opinion so expressed, is more likely to be induced. In such cases the recipient may rely not only upon the honesty and competence of the person who makes the statement, but upon the truth of the facts stated or implied in the opinion. Business ethics justify the other's reliance upon the accuracy of the information so imparted, that is, upon the certain existence of the facts so expressly or impliedly represented. So, too, does the law."

■ The same principle is set forth in Prosser on Torts, p. 541, "A representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining

the facts, or in the manner of expression, or absence of skill or competence required by a particular business or profession."

Appellant argues that the trial court placed too much reliance upon Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425. There was a factual difference in that in Glanzer, the defendant was an independent public weigher who for a consideration weighed and certified the weight of the commodity involved in the purchase transaction between the parties The weighing was inaccurate and, hence, the certificate upon which payment was made was false. As said in International Products Co. v. Erie R. R. Co., 244 N.Y. 331, 155 N.E. 662, 56 A.L.R 1377, interpreting its opinion in Glanzer, the New York Court of Appeals held that the act of negligence did not arise from negligence in weighing but rather "The negligence was inferred from the issuance of the false certificate. That was the wrong for which a recovery was allowed" (244 N.Y. at page 337, 155 N.E. at page 664).

The mere fact that the defendant received no extra compensation for making the certification does not exonerate it from liability. In Glanzer, 233 N.Y. at page 239, 135 N.E. at page 276, Judge Cardozo said, "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully if he acts at all."

*Laches*

The freight was paid in December, 1944. Defendant was notified of the Government's claim in November, 1946, and again in December, 1947. However, not until March of 1952 was a Certificate of Indebtedness forwarded. Although laches does not bar the Government's suit, nevertheless the long delay can be taken into consideration in determining whether interest should be allowed and in what amount. Under all the circumstances, it would be inequitable to award interest at 6% from 1944.

Defendant's contention that the action is barred by laches is without basis since laches is not imputable to the Government, in its character as a sovereign, by those subject to its dominion. United States v. Beebe, 127 U. S. 338, 8 S.Ct. 1083, 32 L.Ed. 121; United States v Kirkpatrick, 9 Wheat. 720, 6 L.Ed. 199; Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237; United States v. DeQueen & Eastern R. R. Co., 8 Cir., 1959, 271 F.2d 597.

The judgment for $5,828.35 is affirmed, except as to that portion thereof which provides for interest from December, 1944. The judgment is modified so as to include interest only from June 13, 1960, the date of the judgment.