JOHN A. DOYLE, Appellant, *v.* THE CHATHAM AND PHENIX NATIONAL BANK OF THE CITY OF NEW YORK, Respondent.

(Argued March 20, 1930; decided May 6, 1930.)

*Herbert C. Smyth* and *George P. Breckenridge* for appellant. The defendant was negligent in accepting collateral

which was worthless and not of the kind required by the trust indenture. In its dealings with investors it was required to act in good faith and was liable if it allowed itself to be used to lend weight to worthless bonds. (*Rhinelander* v. *Farmers' Loan & Trust Co.*, 172 N. Y. 519; *Costello* v. *Costello*, 209 N. Y. 252; *Cunningham* v. *Cunningham*, 81 S. Car. 506; *American Bonding Co.* v. *Richardson*, 214 Fed. Rep. 897; *Merchants Loan Co.* v. *Trust Co.*, 250 Ill. 86; *First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 278; *Continental Ins. Co.* v. *Equitable Trust Co.*, 127 Misc. Rep. 45; 219 App. Div. 711; *Hunsberger* v. *Guaranty Trust Co.*, 164 App. Div. 740; 218 N. Y. 742; *Tschetinian* v. *City Trust Co.*, 186 N. Y. 432.)

*Benjamin M. Kaye* for respondent. The certification of a bond by a trustee does not make the trustee a guarantor of the quality or extent of the security, or responsible for the accurancy of the statements indorsed upon the bond by the obligor. (*Tschetinian* v. *City Trust Co.*, 186 N. Y. 432.) Where a bond contains reference to a trust indenture, such reference is sufficient to put the purchaser upon notice and charge him with knowledge of the contents, terms, conditions and limitations contained in the trust indenture. (*National Salt Co.* v. *Ingraham*, 122 Fed. Rep. 40; *McClure* v. *Township of Oxford*, 94 U. S. 429; *Caylus* v. *New York, Kingston & Syracuse R. R. Co.*, 10 Hun, 295; 76 N. Y. 609; *McClelland* v. *Norfolk Southern R. R. Co.*, 110 N. Y. 469; *Babbitt* v. *Read*, 236 Fed. Rep. 42.) Clauses in a trust indenture, defining the trustee's duties and exempting the trustee from liability, are valid and binding upon the holders of bonds under such indenture. (*Green* v. *Title Guarantee & Trust Co.*, 223 App. Div. 12; 248 N. Y. 627; *Tuttle* v. *Gilmore*, 36 N. J. Eq. 617; *Black* v. *Wiedersheim*, 143 Fed. Rep. 359; *Browning* v. *Fidelity Trust Co.*, 250 Fed. Rep. 321; *Bell* v. *Scranton Trust Co.*, 103 Atl. Rep. 1019; *Newhall* v. *Norristown Trust Co.*, 124 Atl. Rep. 337; *Ainsa* v. *Mer-*

*cantile Trust Co.*, 163 Pac. Rep. 898; *Tschetinian* v. *City Trust Co.*, 97 App. Div. 389.)

KELLOGG, J. The plaintiff is the owner of " Collateral Trust Gold Bonds" executed by the Motor Guaranty Corporation, a Delaware corporation. Certain bonds were issued directly to the plaintiff for value paid; others were issued for value to persons from whom the plaintiff purchased. The bonds are expressed to have been issued in pursuance of the provisions of a certain indenture of trust entered into between the Motor Guaranty Corporation and the defendant, the Chatham and Phenix National Bank of the City of New York, as trustee. Each of the bonds bears a certificate, signed by the defendant as trustee, which reads as follows: " This bond is one of the series of bonds described in the Collateral Trust Indenture mentioned therein." The securities pledged by the Motor Guaranty Corporation to protect its bond issue, which were deposited with the defendant as trustee, have proven worthless and the bonds are uncollectible. The plaintiff, as assignee of all causes of action accruing to the persons from whom he purchased, and in his own right, brings this action to recover from the defendant trustee the losses sustained, on the ground that its certificates were issued negligently and without authority, and that the plaintiff and his assignors were thereby induced to acquire worthless bonds and pay value therefor.

The collateral trust indenture was executed on the 1st day of February, 1922. It recites that the Motor Guaranty Corporation proposes from time to time to issue its collateral trust gold bonds, to draw interest at eight per cent, payable semi-annually; that each bond is to be written in accordance with a form of bond set up in the indenture. This form, with which the bonds of the plaintiff comply, contains the statement that the bond is " secured by the trade acceptances or notes of dealers, guaranteed by the Motor Guaranty Corporation; cash or

notes of purchasers in part payment for motor vehicles, or other first lien mortgages, such purchasers' notes being endorsed by dealers and guaranteed by the Motor Guaranty Corporation." It also contains the following: "This bond is secured by said collateral of a face value of at least one hundred and ten percentum (110%) of the principal amount of the bond." It also states: "This bond shall not be valid for any purpose until the Trustee's certificate endorsed hereon shall have been duly executed." The form of the prescribed certificate, to be signed by the defendant as trustee, is identical with each of the certificates attached to the plaintiff's bonds, the reading of which has already been given.

The indenture provides that bonds shall from time to time be executed by the Motor Guaranty Corporation and delivered to the defendant as trustee for authentication by it; that the delivery shall be accompanied by a request, signed by an appropriate officer of the corporation, stating the amount, date and denomination of bonds to be issued, and demanding authentication of the bonds requested to be issued. It further provides that the trustee shall thereupon, without further action by the corporation, authenticate the bonds and deliver them back to the corporation, "provided, however, there shall be delivered to and pledged with the Trustee" certain named collateral. The collateral to be pledged is as follows: "(a) Cash or current funds, and/or (b) Trade acceptances or notes of dealers guaranteed by the Motor Guaranty Corporation, or notes of purchasers in part payment for motor vehicles, or other first lien mortgages, such purchasers' notes being endorsed by dealers and guaranteed by the Motor Guaranty Corporation." It also provides: "The aggregate principal amount of cash and/or of securities delivered and pledged under subsection (b) shall always be at least equal to 110% of the amount of the Bonds to be issued hereunder in respect thereto." It further provides: "Upon receipt of cash

and/or notes, and/or first lien mortgages, all as provided and described in this article, the Trustee shall be fully protected and is authorized without further inquiry, to authenticate and deliver the Bonds specified in such requests and shall in no way be responsible to see to the application of the proceeds of any such Bond."

The indenture further provides that the trustee may require from time to time that the corporation furnish a certificate or certificates of the president or a vice-president, attested by the secretary or assistant secretary, under the corporate seal, setting forth all or any information " concerning names and addresses of makers, acceptors, and other pertinent data regarding such collateral and/or first lien mortgages, such lists, descriptions and tabulations of collateral delivered or to be delivered to the Trustee." It contains this: " Such certificate or certificates shall be conclusive evidence to the Trustee of all statements therein contained and full warrant and protection to it for any and all action taken on the faith thereof under the terms of this indenture."

During the year 1922 the Motor Guaranty Corporotion delivered to the defendant, for its certification as trustee, bonds of an aggregate par value in excess of $110,000. The defendant executed the requested certificates and returned the bonds to the corporation, which issued them to various persons upon payment of value therefor. Among these bonds were the bonds now owned by the plaintiff. In January, 1923, the corporation defaulted in the payment of interest and the defendant resigned as trustee. The fact then appeared that the corporation had, during the course of the year 1922, deposited with the trustee, as collateral for the bonds certified by it, the notes of various persons or corporations expressing an aggregate par value in excess of $130,000, all of which, with the exception of one note for $300, were in fact utterly valueless. With the same exception, none of the notes given were for the purchase of an automobile; none

were made by an automobile dealer, or, for that matter, by a dealer in goods, wares and merchandise of any description. The makers comprised a lawyer, a bond salesman, a ticket agent, a mining corporation, and a construction company. The maker of two notes, aggregating $75,000, had no occupation, business or other visible means of support, although judgments in excess of $900,000 were outstanding against him. None of the securities held by the trustee defendant, at the time the bonds now owned by the plaintiff were issued, with the exception noted, were the notes or acceptances of dealers or automobile purchasers. Subsequently to January, 1923, all the assets of the Motor Guaranty Corporation were sold for the sum of $143.30.

We agree that the defendant cannot be held as the guarantor of the sufficiency or legality of the securities pledged with it, or for negligence in not ascertaining that the securities were worthless. (*Tschetinian* v. *City Trust Co.*, 186 N. Y. 432; *Green* v. *Title Guarantee & Trust Co.*, 223 App. Div. 12; affd., 248 N. Y. 627; *Byers* v. *Union Trust Co.*, 175 Penn. St. 318; Jones on Corporate Bonds & Mortgages, § 287a.) " The purpose of the certification was not to insure the sufficiency of the security. It was to prevent an overissue." (*Ainsa* v. *Mercantile Trust Co.*, 174 Cal. 504, 512.) If the defendant, without investigation, chose to lend its name to the swindling operations of a bogus finance corporation, by acting as its trustee and certifying its bonds, provided it certified with authority and without actual knowledge of the fraud intended, it was well within its legal rights. The question before us for decision is this: May the defendant be held in damages if, without authority, it certified the bonds now owned by the plaintiff, thereby inducing the plaintiff and his assignors to advance moneys upon the faith of securities which were worthless?

It is clear that the defendant signed the certificates without authority. As we have seen, it was authorized

to certify " provided, however, there shall be delivered to and pledged with the Trustee " certain securities. The securities enumerated were the acceptances or notes of dealers or automobile buyers. No such securities were ever delivered to the defendant. If the defendant had requested and obtained a statement from the appropriate officers of the corporation, certifying to the " pertinent data regarding such collateral " possessed by them, its authority, without further investigation, to execute the certificates could not have been questioned. However, it requested and received no such statement. Its authority, therefore, remained conditional upon the fact that the notes of dealers had been precedently deposited with it. No such securities having been deposited, it had no authority to execute the certificates.

In *Conover* v. *Guarantee Trust Co.* (88 N. J. Eq. 450; affd., 89 N. J. Eq. 584) the facts considered were these: A trust agreement provided that the mortgagor would assign to a trustee bonds and mortgages acquired by it, which had been appraised and guaranteed by a corporation associated in interest with the mortgagor; that, as the securities were deposited, the trustee would certify bonds of the mortgagor to an equal amount and deliver them to it for issuance to purchasers. The trustee accepted bonds secured by mortgages upon the lands of the mortgagor, rather than bonds and mortgages owned by the mortgagor and assigned to the trustee, and thereupon certified an equal amount of bonds which were sold subsequently by the mortgagor. It was held that the trustee was without authority to execute the certificates and was, therefore, liable to compensate the takers of the bonds for their money losses occasioned by the acquisition thereof. In *Rhinelander* v. *Farmers Loan & Trust Co.* (172 N. Y. 519) this court expressed the opinion that where a corporate mortgage provides for a certification of bonds, only upon the making by the directors of the mortgagor of a written instrument setting forth the

purposes of the issue, the certification, without such a statement made, would afford to a taker of the bonds thus certified a cause of action against the certifying trustee for damages resulting from the investment. Such a recovery was there withheld, but only for the reason that the cause of action had been barred by the Statute of Limitations. In *Mullen* v. *Banking Co.* (108 Me. 498) the facts considered were these: All the bonds authorized by a trust indenture had been certified by the trustee and issued by the mortgagor. Nevertheless, on the request of a director of the mortgagor, the trustee certified two additional bonds, which were issued for value to the plaintiff. It was held that the plaintiff might recover from the trustee the difference between the value of an authorized bond and the value of the bond actually received, which was nil. The court said: " Under these circumstances the responsibility rests upon the trustee to authenticate no bond that should not be authenticated."

In *Conover* v. *Guarantee Trust Co.* (*supra*) the opinion was expressed that the right of the takers of the bonds to recover damages from the trustee, on account of its unauthorized certification, rested upon a breach of the duty owed by the trustee to the takers as *cestui que trustent*. A similar view was expressed in *Rhinelander* v. *Farmers Loan & Trust Co.* (*supra*), where the court said of the acceptance by the trustee of its trust position: " In executing that acceptance the defendant created the relation of trustee and *cestui que trust* between it and the future bondholders." Notwithstanding these expressions, it is obvious that a trustee, in wrongly certifying bonds to prospective takers, in order that they may become *cestui que trust*, cannot, at that moment and before the relationship is established, have violated a trust duty owed to them. Manifestly this is true: " There is no trust or other relation between a trustee and a stranger about to deal with a *cestui que trust*." (LINDLEY, L. J., in *Low* v.

*Bouverie,* L. R. [1891] 3 Ch. 82.) In *Mullen* v. *Banking Co. (supra)* the court held that an unauthorized certificate executed by a trustee was a false representation that the bond was properly issued, rendering the trustee liable upon a cause of action in deceit. The fact that the representation was innocently made was not material, said the court, since the trustee, by its certificate, made an assertion of fact which, according to information which was or should have been within its own knowledge, was not true. In the case before us, however, it is clear that the plaintiff may not recover damages for a false representation, as in an action for deceit. In the first place, no such cause of action is alleged. In the second place, there is no proof that the trustee, in issuing its certificates, intended to defraud the plaintiff or his assignors. " Intentional fraud, as distinguished from a mere breach of duty or the omission to use due care, is an essential factor in an action for deceit." ( *Kountze* v. *Kennedy,* 147 N. Y. 124; *Reno* v. *Bull,* 226 N. Y. 546.)

That there may be liability for damages resulting from the negligent utterance of words is now the settled doctrine in this jurisdiction. (*Glanzer* v. *Shepard,* 233 N. Y. 236; *International Products Co.* v. *Erie R. R. Co.,* 244 N. Y. 331.) In the first of the cited cases a buyer of merchandise, in reliance upon an erroneous certificate of a public weigher employed by the seller, made an overpayment for the goods purchased, and was permitted to recover from the weigher the equivalent of the moneys overpaid. In the second, a consignee of merchandise, desiring to insure the same, inquired of a carrier, which was to warehouse them, where the goods would be stored. The carrier, although the goods had not yet been received, replied that they were stored upon a certain dock, and the consignee insured them at that place. They were subsequently received by the carrier and stored at another dock where they were destroyed by fire. In consequence the consignee lost its insurance. It was per-

mitted a recovery from the carrier for the amount of its loss. No relationship had been established, between the plaintiff and the defendant, in either of these cases, when the careless statement was made. In the one, the plaintiff had no contract relationship with the weigher; in the other the relationship of bailor and bailee had not been initiated, for the goods had not been received. Nevertheless the negligent statements gave rise to causes of action.

In *Glanzer* v. *Shepard* (*supra*) Judge CARDOZO said: " The defendants, acting, not casually nor as mere servants, but in the pursuit of an independent calling, weighed and certified at the order of one with the very end and aim of shaping the conduct of another. Diligence was owing, not only to him who ordered, but to him also who relied." In *International Products Co.* v. *Erie R. R. Co.* (*supra*) Judge ANDREWS named certain elements which must be present, in order that a cause of action for negligent speaking might lie. The utterer of the statement must have knowledge that the statement is required for a serious purpose; that those for whom it is made intend to rely and act thereupon; that if it be false they may be damaged. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other, giving the information, owes a duty to give it with care. "An inquiry made of a stranger is one thing; of a person with whom the inquirer has entered or is about to enter into a contract concerning the goods which are or are to be its subject is another. Even here the inquiry must be made as the basis of independent action. We do not touch the doctrine of *caveat emptor*." The case of *Derry* v. *Peek* (L. R. 14 A. C. 337) was cited by Judge ANDREWS as establishing the principle, for application in the courts of England, that no action lies for a statement negligently but not fraudulently made. However, even in

that case, Lord HERSCHELL, in laying down the general rule, made this noteworthy exception: " There is another class of actions which I must refer to also for the purpose of putting it aside. I mean those cases where a person within whose special province it lay to know a particular fact, has given an erroneous answer to an inquiry made with regard to it by a person desirous of ascertaining the fact for the purpose of determining his course accordingly, and has been held bound to make good the assurance he has given."

The defendant here, like the defendant in *Glanzer* v. *Shepard* (*supra*), occupied an independent position, and issued its certificates at the behest of a third person. We may say with Judge CARDOZO that the certificates were made " with the very end and aim of shaping the conduct of another." Like the utterer of the statement in the assumed case in Lord HERSCHELL's exception, it was the " special province " of the defendant " to know a particular fact; " it imparted information, by its certificates, to persons " desirous of ascertaining the fact for the purpose of determining " their course accordingly. Within the requirements laid down by Judge ANDREWS, the defendant knew that the certificates were desired for a serious purpose by persons who intended to rely and act thereupon. They were issued for the very purpose of establishing a relationship of trustee and *cestui que trust* between the defendant and the persons who might rely thereon. It must be remembered that this is not the case of a buyer and seller to whose transactions the principle of *caveat emptor* might apply. It is a case where the creator of a trust, accepted by the defendant, in a solemn instrument signed by both, named the defendant as trustee, for the special purpose, among others, that it might certify bonds to prospective investors, to the very end that the takers of the bonds might receive definite assurance that the bonds were issued pursuant to the

terms of the indenture. It seems clear, therefore, that, within the authorities cited, the defendant, in so far as its certificates constituted misrepresentations of fact, innocently though negligently made, became liable to the takers of the bonds, who invested their moneys upon the faith of the certificates.

The certificates were not to be issued, as we have seen, unless acceptances and notes of dealers and automobile buyers, in excess of bonds to be issued, had been deposited with the defendant as security therefor. Necessarily, therefore, the certificates constituted representations that the deposits had been made. Clearly, if the defendant, as trustee, had issued the certificates when no securities whatever had been deposited with it, liability for the damage done would have arisen. Equally must this follow where, as in this case, the securities deposited were not the securities specified in the trust indenture from which alone the defendant derived its power to certify. In not ascertaining that the securities deposited were not securities of the character named in the indenture, the defendant was guilty of negligence. In certifying the bonds, as issued pursuant to the terms of the indenture, it was guilty of negligently making a misrepresentation of fact. The plaintiff and certain assignors were induced by the certificates to invest in the worthless bonds. If the certificates had not been executed the bonds could not have been issued and no loss would have accrued. Therefore, the false certificates were the proximate cause of the losses sustained. (*Conover* v. *Guarantee Trust Co., supra; Mullen* v. *Banking Co., supra; Rhinelander* v. *Farmers Loan & Trust Co., supra.*)

The provisions of the trust indenture in certain instances exempting the defendant from liability for its acts or omissions as trustee, do not, in this instance, apply. (*Conover* v. *Guarantee Trust Co., supra; Mullen* v. *Banking Co., supra; Rhinelander* v. *Farmers Loan & Trust Co., supra.*) In *Conover* v. *Guarantee Trust Co.*

(*supra*) the vice chancellor said: " It accordingly seems impossible to construe an immunity clause as intended to exempt a trustee from liability for transcending his powers as clearly defined by the trust agreement; his engage-ment is to exercise the powers, and only the powers con-ferred upon him, and the appropriate office and purpose of an immunity clause forming a part of a trust agree-ment which specifically and clearly defines the trustee's powers appears to be to limit his responsibility in matters of judgment and discretion committed to him in the execution of those defined powers."

The record indicates that the plaintiff and many of his assignors took their bonds in reliance upon the certifi-cates and in ignorance of the character of the securities deposited. The plaintiff is entitled to recover damages on account of the investments thus induced, on the basis of the consideration paid therefor plus interest, less the value of the bonds acquired, if any. (*Reno* v. *Bull, supra.*) The record leaves it in doubt whether certain other assignors were not fully aware of the character of the securities deposited and of the shady nature of the financial transactions in which the Motor Guaranty Corporation was engaged and, therefore, whether or not they in good faith relied upon the certificates in making their investments. For the determination of these questions a new trial is necessary.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.