THE CONTINENTAL CORPORATION & another *vs.* THE FIRST NATIONAL BANK OF WESTFIELD.

FREDERICK R. BAUER & others *vs.* SAME.

THE CONTINENTAL BANK AND TRUST COMPANY OF NEW YORK *vs.* SAME.

Hampden. September 21, 1933. — February 23, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Bank*, Certificate on bond. *Bond*, Secured by trust mortgage. *Deceit.* *Trust*, Trustee's expenses.

A bank, which indorsed upon each of an issue of "First Mortgage" bonds of a corporation, "this bond is one of the bonds described in a [certain] mortgage or deed of trust to the . . . [bank] as trustee," did not thereby represent to persons who acquired the bonds that any material fact recited in the bonds was true; and in particular did not represent to such persons that the bonds were secured by a first mortgage upon real estate of a value, at the time of the issuance of the bonds, equal to or in excess of their face amount, even though the words "First Mortgage" in the bonds by custom in the vicinity meant that they were so secured and the bank knew that the mortgage given to it as security for the bonds was not upon real estate but only upon chattels of a value equal to but a small fraction of the face of the bonds.

The bank above mentioned, as certifier of the bonds, was not acting in a relationship of trust toward prospective bondholders and therefore could not be held to have violated any trust duty to them by certifying the bonds with or without knowledge as to the adequacy of the security or as to the truth of the recitals in the bonds.

In the circumstances, it could not be said that the bank above mentioned certified the bonds without authority, or that, even if it represented by its certification that the bonds and the mortgage were properly authorized, such representation was false, by reason of a discrepancy

between the date of the mortgage and the date thereof as recited in the bonds and the bank's certificate or by reason of various other discrepancies between the corporate votes authorizing the bond issue, the bonds and the mortgage; furthermore, even if such representation were false, it caused no damage to the bondholders because the validity of the bonds and of the mortgage never was questioned by the corporation or by a receiver and trustee in bankruptcy thereof subsequently appointed, the coupons on the bonds were paid up to the time the corporation was adjudicated a bankrupt and, after the sale of the mortgaged property in the bankruptcy proceedings, the proceeds were held for the benefit of the bondholders.

In a suit in equity by one of the holders of the bonds above described against the bank for an accounting by it as trustee, it appeared that the defendant had employed counsel in litigation concerning the bond issue, had paid him $250 for services rendered to the defendant individually and $1,250 for services rendered to the defendant as trustee, and had deducted the entire $1,500 from the proceeds of the sale of the mortgaged property. A master found that, if the defendant were responsible for the discrepancies above mentioned, $650 of the total fee should be allocated to the defendant individually and $850 to it as trustee, but that, if the defendant were not responsible for such discrepancies, the fair allocation should be $400 and $1,100, respectively. A decree was entered charging the defendant with $250. Upon appeal by the plaintiff, it was *held*, that

(1) The defendant was not responsible for such discrepancies and therefore should not be charged with $650;

(2) The finding by the master as to the allocation to be made in such circumstances was not clearly wrong;

(3) The decree should be modified so as to charge the defendant with $400.

BILL IN EQUITY, commenced by a common law writ dated November 4, 1931. Also

Two ACTIONS OF TORT. Writs dated September 19, 1932.

Creditors' Composition Corporation was permitted to intervene in the suit in equity as a party plaintiff. In the Superior Court, the suit in equity and the actions were referred to the same person as master and auditor, respectively, for hearing together, his findings as auditor to be final. Material findings are stated in the opinion. By order of *Dillon*, J., there were entered in the suit in equity an interlocutory decree confirming the master's report, and a final decree described in the opinion. The plaintiff and the intervening plaintiff appealed. The judge allowed a motion by the defendant for judgment in its favor on the auditor's report in each action at law. Motions

by the plaintiffs for judgment were denied. The plaintiffs alleged exceptions.

*A. Brayton,* for the plaintiffs.

*L. Wheeler, Jr.,* for the defendant.

PIERCE, J. The second two actions are at law; they are in tort, in the nature of deceit. The plaintiffs seek to recover from the defendant damages alleged to have been suffered by them by reason of false representations alleged to have been made by the defendant, as trustee, by its certificate on certain bonds of The Martin Trailer Co. The first suit is in equity, and is brought against the defendant, as trustee under an indenture, to secure these bonds, for an accounting and for damages for breach of its fiduciary duties. The bonds involved are the same as those which were before this court in *Continental Corp.* v. *Gowdy,* 283 Mass. 204. The cases were tried together. In the law actions each declaration consisted of four counts, which, in substance, alleged that each plaintiff purchased twenty-eight bonds of The Martin Trailer Co. upon which the defendant had indorsed a "Trustee's Certificate"; that the representations made by the defendant by this certificate were false; that the defendant knew or upon reasonable inquiry might have known that said representations were false; that the plaintiffs relied upon these representations in purchasing the bonds; that The Martin Trailer Co. became bankrupt September 26, 1930, and that the bonds were worthless. The first count in each action alleged that by custom and usage the trustee's certificate was a representation that each bond was one of the bonds described in the indenture; that there was existing a mortgage or deed of trust to the certifying bank securing the bonds and dated April 17, 1929; that the bonds were duly executed and were the legal and authorized obligations of The Martin Trailer Co.; that the mortgage or deed of trust was duly recorded and duly executed in accordance with the company's authorization; and that the bond was secured by a first mortgage on real estate sufficient in value "to cover the indebtedness of the entire issue." In the second count it is alleged that the defendant

by the recitals of the bonds and the certification intended to represent falsely that the bonds were secured by a first mortgage on real estate of a value reasonably adequate to secure the issue, and thereby intended to induce persons to purchase the bonds. In the third count it is alleged that the defendant by its certificate on the bonds falsely represented to whomsoever the bonds might be presented for purchase that the bond was one of the bonds described in the mortgage or deed of trust to the subscriber as trustee and dated April 17, 1929. By the fourth count it is alleged that the recitals in the bond and the trustee's certificate on the bond were actually false and that the defendant "by signing the trustee's certificate thereon" negligently, wantonly and recklessly misrepresented that the recitals in the bond and certificate were true. The answer in each action was a general denial.

The law actions were referred to an auditor under a stipulation that his findings of fact should be final, except such as are inferences drawn by him from facts found. He filed separate reports. Upon motions for judgment by both parties on the reports, the judge ordered judgment to be entered for the defendant in each case. The actions come before this court on the plaintiffs' exceptions to the allowance of the defendant's motions for judgment and disallowance of the plaintiffs' motion for judgment.

In the equity suit the plaintiffs' claim for relief was based on allegations in the bill of complaint to the effect that the defendant, as trustee, failed to use reasonable care to see that the bonds and trust instrument were duly executed and were the legal and authorized obligations of the mortgagor, with the result that the right of the bondholders to have applied for their benefit the property described in the deed of trust was disputed; that this made it necessary for the trustees to employ counsel to protect the interests of the bondholders, which would have been wholly unnecessary if due care had been used in connection with the original execution of said trust; that the defendant conspired with a firm of brokers to issue the bonds on insufficient security, in order to obtain payment of debts owed by The Martin

Trailer Co. to the defendant; that it negligently delayed in foreclosing on the security, improperly permitted a sinking fund set up for the retirement of said bonds to be paid out for other purposes, and received compensation, as trustee, which it should forfeit because of its misconduct. The defendant filed a demurrer which was overruled. The defendant appealed. Thereafter the defendant filed an answer to the bill of complaint. Subsequently Creditors' Composition Corporation was allowed to intervene as party plaintiff. The suit was referred to a master. Upon the filing of his report, which was confirmed without objection, a decree was entered ordering the defendant to pay to itself as trustee for the bondholders of The Martin Trailer Co. certain sums, amounting to $316.87, which the court found to have been improperly paid out, and to pay the plaintiff and intervening plaintiff in equal shares, costs in the sum of $26.50. The plaintiffs appealed from the decree, and this suit is now before this court on their appeal. Respecting this appeal, the plaintiffs state in their brief that "The only point to be argued . . . relates to the contention by the plaintiff that the defendant should likewise be charged with certain payments of counsel fees made by it out of the trust property."

The facts relating to the issue of these bonds as they appear in the auditor's and master's reports are these: The Martin Trailer Co., a Massachusetts corporation, was incorporated April 27, 1928, to manufacture trailers and similar auxiliary conveyances. In the spring of 1929, it needed cash for payroll, rent and additional capital for expanding business. In March, 1929, one Kenneth L. Mytinger of the stock brokerage firm of Walsh, Stockhausen and Mytinger, of Troy, New York, became interested in the affairs of The Martin Trailer Co. and his firm, without solicitation by or communication with the defendant, submitted a proposal looking to the financing of the corporation. This plan was approved by the directors on March 28, 1929, and submitted to the stockholders on April 9, 1929, who voted "That The Martin Trailer Company hereby authorizes the issue of $100,000 First Lien,

Ten-Year, Sinking Fund, Seven per cent, Debenture Bonds, to be dated May 1, 1929 and to mature May 1, 1939 . . . . The said Bonds shall be a first lien obligation of the Corporation and will constitute its sole funded indebtedness and will be deposited with the First National Bank of Westfield, Massachusetts, as Trustee under a Trust Agreement which shall provide for a fixed sinking fund requiring the retirement of all of the said Bonds on or before the due date . . . ." After this special meeting of the stockholders, Mytinger conferred at the defendant bank with Charles E. Avery, its cashier, who had been present at the special stockholders' meeting and had discussed the proposed bond issue with Mytinger. Mytinger prevailed upon Avery to have the bank accept the trusteeship in connection with the proposed issue, and Avery at the request of Mytinger recommended by name one or more attorneys who could draw up the necessary documents. Later, Avery conferred with the attorney selected by Mytinger and transmitted to him certain instructions of Mytinger. After the bonds and indenture were prepared, they were presented to the bank, and, at least to the extent that they were issued, were certified by the bank by J. A. Kenyon, its trust officer. It did not appear that Avery or Kenyon or any other officer of the defendant bank checked the terms of the bonds with the indenture or the bonds and indenture with the authorizing vote, or ascertained whether or not the indenture contained any identifying reference to the bonds or had been recorded. In connection with the instructions given by Avery at the instance of Mytinger to the attorney who drafted the bonds and indenture, Avery handed to him a so called "Inventory of Machinery." It listed the machinery and tools to be covered by the indenture and was to constitute the security thereunder. Opposite each item on the inventory was a valuation, and the total thus appearing on the entire list of machinery and equipment was $12,568.01. It did not appear what the basis of the valuation was.

The Martin Trailer Co. owned no real estate until May 20, 1929, when it purchased a plant it had been renting

from The Planet Company, in consideration of assuming two $10,000 mortgages thereon and of the issue to The Planet Company of $5,000 face value of the bonds involved in this case. The certificate of the defendant, as trustee, on each of the bonds here involved is as follows: "This is to certify that this bond is one of. the bonds described in a mortgage or deed of trust to the subscriber as trustee, and dated April 17, A. D. 1929. The First National Bank of Westfield, Trustee. By J. A. Kenyon, Trust Officer." It did not appear on what date Kenyon executed the trustee's certificate on the bonds here involved, but it did appear that none of the bonds was actually issued prior to May 11, 1929, that on May 11, 1929, the first block was issued, and that the remainder were issued from time to time until October 14, 1929. All the bonds here involved were originally issued to Walsh, Stockhausen and Mytinger and delivered to Mytinger as the defendant bank received the face value thereof from him in cash. Each of said bonds is described on the reverse thereof as a "Ten Year First Mortgage 7% Sinking Fund Gold Bond," and on the face thereof is entitled "First Mortgage 7% Sinking Fund Gold Coupon Bond." It is further recited in each bond that it is "one of a series of coupon bonds on The Martin Trailer Company, known as its First Mortgage 7% Sinking Fund Gold Coupon Bonds . . . all of which bonds are issued or to be issued under and secured by a mortgage, or deed of trust, dated April 17, A. D. 1929, and executed by The Martin Trailer Company to The First National Bank of Westfield, in trust, to secure the payment of the principal and interest of all of said bonds, to which mortgage or deed of trust reference is hereby made for a description of the property so deeded or mortgaged, the nature and extent of the security, the rights of the holders of the bonds under the same, and the terms and conditions upon which said bonds are issued and secured."

There was no mortgage or deed of trust dated April 17, 1929, executed by The Martin Trailer Co. to the First National Bank of Westfield, although the bond twice referred to an indenture of such date in the body thereof

and also referred in the trustee's certificate to the indenture as being dated April 17, 1929. The Martin Trailer Co., however, did execute an indenture dated May 1, 1929, conveying to the defendant in consideration of $100,000 certain machinery and equipment to secure it as trustee for the holders of bonds therein referred to. The reference to bonds in said indenture is a reference to bonds generally and does not definitely identify the bonds here in issue as the bonds secured thereby. The bank at all times kept at its banking office a copy of the indenture or deed of trust dated May 1, 1929, available for inspection to all inquirers and furnished, or was ready to furnish, copies thereof to all bondholders or prospective bondholders who applied for the same.

The indenture dated May 1, 1929, purports, by recital in the testimonium clause thereof, to be executed by virtue of a vote of the stockholders of The Martin Trailer Co. at a meeting on May 1, 1929. The records of the corporation do not indicate that any meeting of the stockholders was held on that date; nor do the records of the corporation indicate that the indenture of May 1, 1929, was at any time submitted to the stockholders of the corporation and its execution authorized by them; nor do the records of The Martin Trailer Co. indicate that its directors or stockholders ever passed any vote purporting to authorize the transfer of any property, real or personal, to the defendant or any other person or corporation as trustee, to secure the $100,000 bond issue dated as of May 1, 1929.

David C. Little, who succeeded Joseph A. Kenyon as trust officer of the defendant bank, at the suggestion of Avery, examined the bonds during the early part of July, 1929, and the indenture of May 1, 1929, for the purpose of familiarizing himself with the provisions thereof. As a result of his investigation, he learned of the nonrecording of the indenture of May 1, 1929, and further learned that by reason of the lapse of time it could not then be recorded. He thereupon caused a chattel mortgage in the ordinary short form dated August 22, 1929, to be executed by The Martin Trailer Co. to the defendant as trustee "under the

terms of a trust mortgage dated May 1, 1929, to be re-
corded herewith" and caused the same to be recorded on
August 27, 1929, in the clerk's office in the city of West-
field. Notwithstanding the foregoing recital, however, the
trust mortgage dated May 1, 1929, was not recorded with
the chattel mortgage or at any other time. The chattel
mortgage referred in its proviso clause to "all of the first
mortgage bonds issued under said indenture of trust dated
May 1, 1929," and covered in identical language and order
the same property described in said indenture of trust.
There was nothing in the evidence to show that the di-
rectors or stockholders of The Martin Trailer Co. ever
authorized by vote the execution of the supplemental
chattel mortgage which covered in identical language and
order the same property described in the deed of trust or
indenture of May 1, 1929. After the preparation and
recording of the supplemental chattel mortgage, the de-
fendant continued to issue the bonds it had certified, and
some of these later bonds are among those held by the plain-
tiffs.

The deed of trust or indenture dated May 1, 1929, and
the supplemental chattel mortgage dated August 22, 1929,
were the only indentures, mortgages or deeds of trust
executed by The Martin Trailer Co. to secure the bond
issue here involved or any other bond issue. The action
of Little in having the supplemental chattel mortgage
executed and recorded was merely to correct the defect
arising from the nonrecording of the indenture of May 1,
1929. It follows by inference that the only indenture
existing at the time the bonds were certified by the de-
fendant was the indenture of May 1, 1929, and that that
was the only indenture which could have been intended to
be described in the bonds and by the certificate of the
trustee on the bonds.

The vote passed by the stockholders of The Martin
Trailer Co. on April 9, 1929, purporting to authorize the
bond issue here involved, and the terms of the indenture
and of the bonds were not in accord, but contained dis-
crepancies, the more material of which were as follows: (a)

The vote authorized "First Lien . . . Debenture Bonds" but the bonds issued purported to be "First Mortgage . . . Bonds." (b) The bonds are dated as of May 1, 1929, in accordance with the provisions of the vote but the indenture contains no reference to the bonds by identifying date, or other identifying reference. (c) The vote contains no reference to the date of the indenture but the bonds twice refer in the body thereof, to the date of the indenture as April 17, 1929, and the trustee's certificate thereon refers to the indenture as being dated April 17, 1929. (d) The indenture purports to be executed by virtue of an authorizing vote of May 1, 1929, but no such vote was passed. (e) The vote and the bonds themselves provided that the latter were to be redeemable at $103, whereas the indenture provided for redemption at par. (f) The vote contained no provision specifying the medium of payment of principal or interest, nor did the indenture, whereas the bonds specified payment of principal and interest in gold coin of the United States of the present standard of weight and fineness. (g) The vote provided that the bonds were to be the sole funded indebtedness of The Martin Trailer Co., but neither the indenture of May 1, 1929, nor the bonds make any reference to this provision. (h) The vote authorized bonds tax free to the extent of the normal Federal income tax not exceeding two per cent, but the bonds contained a tax free covenant to the extent of "any tax or taxes which The Martin Trailer Company may be required to pay thereon or to retain therefrom under or by reason of any present or future law of the United States, or of any state, county, or municipality therein."

It appears in the findings that twenty-eight of the bonds originally issued to Walsh, Stockhausen and Mytinger were acquired by the plaintiffs Bauer et al. on October 8, 1929, as additional security on a previously made loan. Twenty more of these bonds were acquired by the plaintiff The Continental Bank and Trust Company of New York as part of the collateral for a loan made to Walsh, Stockhausen and Mytinger on September 23, 1929, and eight more bonds as additional collateral for this loan on October

28, 1929. Interest was paid on the bonds in November, 1929, and May, 1930.

In July, 1930, The Martin Trailer Co. was put in receivership and subsequently on September 26, 1930, it was adjudged a bankrupt. The property included in the mortgage to the defendant as trustee was sold with other assets of the company by the trustee in bankruptcy, the sum allocated to this property being $5,000. After payment of counsel fees and expenses the bank held, and still holds, $3,395.32 for distribution ratably among the bondholders and advised them that they were entitled to receive as their *pro rata* share of said balance approximately four and seventeen hundredths per cent of the face amount of the bonds held.

The plaintiff The Continental Bank and Trust Company of New York sold its bonds here in question on November 26, 1930, at public auction to The Continental Corporation, a subsidiary of the plaintiff, realizing a net amount of $199. The net proceeds were applied to the loan of Walsh, Stockhausen and Mytinger and left a deficit of $13,801. The plaintiffs Bauer et al., being insolvent, executed assignments in July, 1931, for a nominal consideration of all their assets including the bonds here in issue to Creditors' Composition Corporation organized to take over these assets. Other collateral on the loan to Walsh, Stockhausen and Mytinger had been sold leaving a deficit on the loan in excess of $28,000. The Continental Corporation and the Creditors' Composition Corporation as intervener are the plaintiffs in the equity suit.

In the law actions the plaintiffs make the basic contention: (1) "A bank purporting to certify an issue of bonds as trustee for bondholders thereby represents to prospective bondholders that the statements in its certificate are made of its own knowledge and are known to be true; and that further it has no actual knowledge or notice that any statement appearing on the face of the bonds or indenture is false; and is liable to prospective bondholders in the event that the certificate contains misstatements of fact or in the event that the trustee has certified the

bonds having actual knowledge or notice that the bonds contain fraudulent misrepresentations of fact"; (2) In the instant cases the "defendant's certificate was false" in that "The auditor found that the bonds, interpreted in the light of universal custom and usage, contained a representation that they were secured by a first mortgage of real estate equal in value to the amount of the bonds issued"; that "The certificate affixed by the trustee amounted to a representation to prospective bondholders that the bonds were secured by an indenture purporting to be a first mortgage of real estate and that the trustee had no knowledge that the security was insufficient"; that "The defendant trustee is liable to prospective bondholders for the reason that it knew that the indenture was in fact a chattel mortgage and was secured by property of a stated value equal to only a very small fraction of the issued bonds"; that "The trustee is liable for having falsely certified that there was an indenture dated April 17, 1929, describing and securing the bonds in question, when in fact there was no such indenture securing the bonds"; that "The act of the trustee in certifying the bonds in question was under the circumstances without authority either under the terms of the indenture or under the terms of the vote of the stockholders of the Martin Trailer Co."; (3) "The plaintiff relied on the defendant's representations and was thereby induced to take the bonds"; (4) "The plaintiff is not barred from recovery by its failure to investigate."

It is plain that the basic question is whether the defendant's certificate amounted to a misrepresentation as to the truth or falsity of any material fact recited on the face of the bond. The phraseology of this certificate alone manifestly does not constitute an unequivocal representation of any other fact than that each bond so certified is "one of the bonds described in a mortgage or deed of trust to the subscriber as trustee, and dated April 17, A. D. 1929." These certificates make no reference to the recitals in the bonds, and no representation whatever in regard to them is made. The statements on the face and reverse of the

bonds are representations of the maker of the bonds, not those of the certifier. The finding of the auditor, subject to the objection and exception of the defendant, that a custom as a fact exists among brokers and bankers in Westfield, Massachusetts, and vicinity, and in New York City, that the words "first mortgage," appearing on a bond similar to the bonds here certified to by the defendant bank as trustee, have a universal meaning or connotation to the effect that the bonds are secured by a first mortgage on real estate which has a value at the time the bonds are issued equal to or in excess of the face amount of the authorized issue of bonds, must be received with the further finding of fact that there is no evidence that the trustee's certificate, in and of itself, is made by custom and usage a representation that bonds certified were first mortgage bonds, the property underlying them being at least equivalent to the face amount of the issue, and that the bonds were the duly authorized and executed obligations of the issuing company.

The question for decision then is, in the absence of such custom and usage, whether the certificate of trust in the manner and form here adopted is as matter of law a representation in any of the foregoing respects. There is a considerable body of authority in other jurisdictions to support the proposition that the mere certificate of a trustee, couched in terms similar to those now before the court, amounts to no guaranty whatever regarding the security so certified and that its effect is at most to identify the bonds as the bonds mentioned in the mortgage or deed of trust. *Ainsa* v. *Mercantile Trust Co.* 174 Cal. 504. *Knickerbocker* v. *Fort Dearborn Trust & Savings Bank*, 219 Ill. App. 409. *Bauernschmidt* v. *Maryland Trust Co.* 89 Md. 507. *McCauley* v. *Ridgewood Trust Co.* 52 Vroom, 86. *Tschetinian* v. *City Trust Co.* 186 N. Y. 432. *Reynolds* v. *Title Guarantee & Trust Co.* 240 N. Y. 257. *Bell* v. *Title Trust & Guarantee Co.* 292 Penn. St. 228. *Thayer* v. *South Side Foundry & Machine Works*, 112 W. Va. 134. See *Mullen* v. *Eastern Trust & Banking Co.* 108 Maine, 498.

In their brief the plaintiffs concede that ordinarily the trustee is not held to guarantee the extent or adequacy of

the security subject to the indenture. They contend that "The question here is merely whether the trustee can knowingly with impunity lend its aid to the execution of a scheme to defraud prospective bondholders," and they seek to distinguish the cases upon the theory that the defendant, by certifying these bonds designated on their face as first mortgage bonds, with knowledge or even a negligent lack of it that there was no real estate and that the bonds were secured by a mortgage of chattels considerably less in value than the amount of the bond issue, is to be held guilty of a scheme to defraud. False and fraudulent representation is the sole basis of the plaintiffs' claim. But this position is untenable because the findings in the equity suit repel the conclusion of bad faith and conspiracy, and the findings in the auditor's reports as to the defendant's intention are based entirely on the legal effect to be attached to the certificate.

In the final analysis the legal question for decision is: If the defendant makes no representation as to the statements in the bonds, does it certify them at its peril to ascertain the truth of the facts accessible to it? The position of the plaintiffs in this respect can be sustained only if the court goes contrary to the well reasoned opinions of the cases above collected, and to the almost unanimous holding that such a certificate as the defendant's in this case does not constitute any representation as to the validity or sufficiency of the security behind the bonds. We find no sound reason in the argument of the plaintiffs why the court should decide on the facts of the case against the trend of judicial decisions and the almost unanimous views of legal writers, and we refuse so to do. It is further plain that the certifier of such bonds is not a trustee for prospective purchasers, and, therefore, cannot be held to have violated any trust duty to such prospective purchaser by certifying the bonds with or without knowledge as to the adequacy of the security or as to the truth of the recitals in the bonds. See *Doyle* v. *Chatham & Phenix National Bank,* 253 N. Y. 369, 376. Furthermore, on the face of these bonds there was an express reference made to the

indenture or deed of trust for a description of the property deeded or mortgaged to secure the bonds.  The plaintiffs were put on inquiry by this recital and charged with notice of the terms of the bond.  *Bell* v. *Title Trust & Guarantee Co.* 292 Penn. St. 228, 236.  The plaintiffs having knowledge of the actual status of the bonds or the means of acquiring such knowledge cannot unload their negligence upon the defendant.  *Bell* v. *Title Trust & Guarantee Co.* 292 Penn. St. 228, 236.

The plaintiffs further contend that the defendant is liable for having falsely certified that there was an indenture dated April 17, 1929, describing and securing the bonds in question, when in fact there was no such indenture securing the bonds, and that the act of the trustee in certifying the bonds was in the circumstances without authority either under the terms of the indenture or under the terms of the vote of the stockholders of The Martin Trailer Co. This contention rests on the theory that the trustee's certificate represents not only the truth of the recitals in the certificate itself but also the truth of the recitals in the bond to the extent that it has examined the bond and indenture, as well as the papers constituting the necessary evidence of the authority of the corporation to issue the bonds and indenture, and that this issuance was validly authorized, with the additional representation that the indenture was duly recorded, citing *Miles* v. *Roberts*, 76 Fed. Rep. 919, *Miles* v. *Vivian*, 79 Fed. Rep. 848, and *Green* v. *Title Guarantee & Trust Co.* 223 App. Div. (N. Y.) 12, affirmed 248 N. Y. 627.

The auditor states that "The trustee's certificate standing alone is false in so far as it recites in respect to each bond that such bond is one of the bonds described in a mortgage or deed of trust dated April 17, 1929, because there was no mortgage or deed of trust bearing that date. If, under the findings hereinbefore made, the trustee's certificate be deemed to refer to the indenture of May 1, 1929, then I find that said indenture did not definitely describe the bonds certified, but referred generally to bonds without any definitely identifying description or reference. I

further find, however, that there was no indenture other than that of May 1, 1929, and that there was no issue of bonds by The Martin Trailer Co. other than that here involved." The plaintiffs' contention is that in the light of these circumstances the defendant was under an obligation to discover the discrepancies and inaccuracies in the bonds and indenture, that it had no right to certify the bonds under the vote of the stockholders, and, therefore, the certification by the defendant was unauthorized and that the case falls within the principles enunciated in *Doyle* v. *Chatham & Phenix National Bank*, 253 N. Y. 369. The certificate is silent respecting the security and therefore makes no representation as to such. It follows that the trustee is not liable for deceit in case the mortgage, deed of trust or indenture is not recorded. *Bell* v. *Title Trust & Guarantee Co.* 292 Penn. St. 228, 235. The substantial question is: Should the certification be regarded as unauthorized so far as the defendant is concerned because there was no indenture dated April 17, 1929, nor any vote of the stockholders in the indenture of May 1, 1929, which authorized the trustee to affix its certificate to these particular bonds? We think in the circumstances the certification should not be held to be unauthorized. The auditor finds that the "indenture of May 1, 1929, was the only indenture connected with the bonds here in issue that was at any time executed by The Martin Trailer Co."; that "it is a fair inference that said indenture [dated May 1; 1929] despite the discrepancy between its date and the date recited in the bonds and trustee's certificate was in fact intended to be the indenture referred to in the bonds and trustee's certificate and governing the trustee's rights and obligations in respect to said bond issue. Throughout the presentation of the plaintiffs' case, the indenture of May 1, 1929, was referred to in their behalf as the indenture referred to in the bonds and trustee's certificate as governing the trustee's rights and obligations in respect to the bond issue, although the plaintiffs did challenge the due authorization of the execution of the indenture and the effect of its nonrecording."

As above noted "The deed of trust or indenture dated May 1, 1929, and the supplemental chattel mortgage dated August 22, 1929, were the only indentures, mortgages or deeds of trust executed by The Martin Trailer Co. to secure the bond issue here involved or any other bond issue. The action of Little in having the supplemental chattel mortgage executed and recorded was merely to correct the defect arising from the nonrecording of the indenture of May 1, 1929. It follows by inference that the only indenture existing at the time the bonds were certified by the defendant was the indenture of May 1, 1929, and that that was the only indenture which could have been intended to be described in the bonds and by the certificate of the trustee on the bonds." If the discrepancy in the date of the indenture is disregarded it is clear that the plaintiffs' claim must rest on a false representation of a material fact. It is plain that the certification by the defendant was authorized within the language of the only indenture, that of May 1, 1929, which did exist to secure these bonds, and that the bonds now in suit were those referred to in that indenture. The defendant's certification amounted to no more than a representation of that which was a fact. No unauthorized certification is made and the principle enunciated in *Doyle v. Chatham & Phenix National Bank*, 253 N. Y. 369, 380, has no application. If it be assumed that the defendant did by its certification make representation that the bonds and mortgage or deed of trust were legally authorized, and that the mortgage or deed of trust was recorded, these representations were substantially true and such defects as might be held to have existed were cured by subsequent ratification of the bonds and indenture by the corporation and the recording of the chattel mortgage. The plaintiffs were not bound by these representations to their damage. The following findings of the auditor would sustain such conclusions: (1) So far as The Martin Trailer Co. is concerned there is no evidence that it or the receiver appointed for it in the Massachusetts State court or its trustee in bankruptcy in the bankruptcy court ever seriously challenged the validity of said indenture, bonds or supplemental

chattel mortgage; (2) it further appeared that The Martin Trailer Co. delivered some of said bonds in part consideration of the purchase price of real estate and accepted cash for the face amount of other bonds and deposited the proceeds to its account and withdrew the same from time to time on its order; (3) it also appeared that The Martin Trailer Co. paid interest coupons coming due and payable on November 1, 1929, and May 1, 1930, on bonds then outstanding. The coupons on the bonds held by plaintiffs were cut from the bonds and they received the payment thereof but credited the amount received to the account of Walsh, Stockhausen and Mytinger; and (4) this court allowed a petition by the defendant bank as trustee for the bondholders to foreclose on the security in connection with receivership proceedings filed July 28, 1930, and pending herein. When The Martin Trailer Co. was petitioned into bankruptcy a similar petition by defendant bank, as trustee, to foreclose was subsequently allowed by the referee in bankruptcy and in addition, a petition by the trustee in bankruptcy, assented to by defendant bank as trustee for the bondholders, to sell the mortgaged assets free and clear of lien was allowed by the referee in bankruptcy. Therefore it is plain that the plaintiffs have failed to establish as an essential element of their case that the defendant by the trustee's certification made false representation of material facts; or that, in the alternative, if it did in its certificates make false representation of fact as to the validity of the authorization of the bonds and indenture, such misrepresentation caused no damage to the plaintiffs.

The plaintiffs' contention that they relied on the defendant's representation involved in the certificates and in the bonds, at least the contention of The Continental Bank and Trust Company of New York, is sustained on the evidence that they believed it represented, in the light of the statements made to them by Mytinger, who tendered them the bonds as collateral, that these were first mortgage bonds as that was understood by custom and usage among bankers and brokers. But whatever else such certificates

might be held to represent, they did not represent, in the light of the custom among bankers and brokers, that the bonds were secured by a first mortgage on real estate of a value at the time of issue equal to or in excess of the amount of the authorized issue. The primary representation, therefore, upon which the plaintiffs relied when they received these bonds as security was not one which the defendant can be held as matter of law to have made. It follows that the defendant's motions in the law actions for judgment for the defendant were rightly allowed, and that the exceptions saved to the allowance of these motions must be overruled.

In the equity suit, the plaintiffs state in their brief that "The only point to be argued . . . relates to the contention by the plaintiff that the defendant should . . . be charged with certain payments for counsel fees made by it out of the trust property." It appears that for the purpose of representing the defendant both individually and as trustee in connection with the default, threatened litigation by the plaintiffs' predecessors, and subsequent bankruptcy of The Martin Trailer Co., the defendant employed counsel and that counsel deducted from the proceeds turned over by the trustee in bankruptcy the sum of $1,500 for legal services rendered. Counsel apportioned these charges as between services rendered the bank individually and services rendered the bank in its trust capacity for the benefit of all the bondholders, in the amounts respectively of $250 and $1,250. The final decree entered ordered the defendant to pay to itself as trustee for the bondholders the sum of $250. The plaintiffs complain of this settlement and contend that the defendant should have been ordered to pay over a greater sum — $400. They rely on the following findings of the master: "I find as a fact that the discrepancies and inaccuracies . . . referred to in paragraph 30 and elsewhere in this report, and the non-recording of the indenture of May 1, and the recording of the supplemental chattel mortgage, complicated the work of the attorneys and involved research and investigation that would otherwise have been unnecessary. . . . [that it]

was in large part prompted by the claims and threats of legal action made by the plaintiffs' predecessors against the defendant in July, 1930, and thereafter, and . . . would in large measure not have been undertaken by these attorneys except for such claims and threats of legal action made by the plaintiffs' predecessors against the defendant. I find that if, as matter of law, it shall be held that the defendant bank is not responsible for said discrepancies, inaccuracies, and the nonrecording of the indenture, a fair and reasonable allocation of said total charge would be $1,100 to the bank as it is trustee under the indenture and $400 to the bank individually. On the other hand, if the defendant bank shall, as matter of law, be held responsible for the complications and additional work involved in the settlement of the trust estate by reason of having certified said bonds with said discrepancies and inaccuracies existing, and if said bank shall be held responsible as matter of law for the nonrecording of the indenture, then I find that of the total charge made by counsel, the amount of $650 should be allocated to the bank individually and $850 to the bank in its trust capacity." The discrepancies and inaccuracies referred to are those between the authorizing vote and the bonds and indenture which are set forth at length in the consideration of the law actions above. It is held in the above actions that the defendant is not responsible for said discrepancies, inaccuracies and nonrecording of the indenture. *Bell* v. *Title Trust & Guarantee Co.* 292 Penn. St. 228, 235. See *Bauernschmidt* v. *Maryland Trust Co.* 89 Md. 507, holding that a trustee is under no obligation to see that the indenture has been recorded. To the *contra*, that the trustee has such obligation see *Miles* v. *Roberts*, 76 Fed. Rep. 919; *Miles* v. *Vivian*, 79 Fed. Rep. 848. See also *First National Fire Ins. Co.* v. *Salisbury*, 130 Mass. 303, 310, and compare *Benton* v. *Safe Deposit Bank*, 255 N. Y. 260.

The plaintiffs contend, however, that even though the defendant be not chargeable for the additional expense rendered necessary by the discrepancies, inaccuracies and the nonrecording of the indenture, it should be charged with

an additional $150 in accordance with the master's finding above set forth.   We think the court below should have followed the master's finding in this regard.   In the circumstances disclosed the finding of the master by which he allocated of the total charge $1,100 to the bank as it is trustee under the indenture, and $400 to the bank individually, is a finding of fact which cannot be said to be clearly wrong.   It results that paragraph "1" of the final decree must be corrected so as to read   1. That the defendant pay to itself as trustee for the bondholders of The Martin Trailer Co., and account to said bondholders for, the sum of $466.87, only, made up of the following amounts: (a) For overpayment for insurance out of trust funds on April 18, 1931, $23.87; (b) For payment out of trust funds on November 25, 1930, to purchaser of the assets of The Martin Trailer Co., $43; (c) For fees retained by attorneys out of the proceeds of the sale of the mortgaged property in payment of fee for services rendered to the defendant in its individual capacity, and not reimbursed to the trust fund by the defendant, $400.   As so modified the decree is to be affirmed.

In the actions at law the exceptions are overruled.

*Ordered accordingly.*