GOSHI KAISHA YAMAMOTO SOHONTEN, Appellant, *v.* FRANCE AND CANADA STEAMSHIP COMPANY, LTD., Respondent.

First Department, April 29, 1921.

Depositions — motion for issuance of commission and letters rogatory for examination of witnesses in foreign country — when court will pass upon relevancy or materiality of testimony sought — motion denied because testimony sought was irrelevant and immaterial.

While ordinarily on a motion for the issuance of a commission and letters rogatory for the examination of witnesses in a foreign country, the court will not pass upon the relevancy or materiality of the testimony sought, yet, where a large sum of money is in the possession and subject to the risks of the business of the moving party, and a long delay of the trial will ensue, the court will scrutinize more carefully the moving papers and, if the testimony is irrelevant and immaterial, deny the motion.

In this case such a motion should be denied because the testimony sought has not the slightest relevancy or materiality to the issues.

Appeal by the plaintiff, Goshi Kaisha Yamamoto Sohonten, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 10th day of March, 1921, granting defendant's motion for the issuance of a commission and letters rogatory for the examination of witnesses in Japan.

*Leavitt J. Hunt* of counsel [*Hunt, Hill & Betts,* attorneys], for the appellant.

*Carroll G. Walter* of counsel [*Edward J. Patterson* with him on the brief; *Patterson, Eagle, Greenough & Day,* attorneys], for the respondent.

Page, J.:

The steamship *Kageshima Maru,* a vessel owned by the Government Iron Foundry of Japan, was chartered to the plaintiff by a contract of custody from the year 1913 to the year 1919. This contract of custody provided for the insurance of the vessel for the benefit of the iron foundry as against ordinary marine losses, and provided in article 9 that in the event that the plaintiff should fail, " due to the ship's loss, stranding or any other calamity, to return the vessel and fittings, * * * the Iron Foundry may withhold the insurance money." And it further provided:

" Art. 10. In the event that the vessel and fittings are lost or damaged, and the Iron Foundry is unable to recover all such losses in accordance with the provisions of the Art. 9, the Shosho Yoko shall jointly with their guarantor indemnify such loss or damage claimed by the Iron Foundry, whatever the cause of loss or damage may be."

The contract provided for the payment of a certain hire for the use of the steamship. On February 8, 1917, the plaintiff, through its shipbroker in New York, subchartered the steamship to the defendant by a charter party which provided as follows: " Charterers to insure and keep insured at their expense, but for owners' benefit the steamer against war risk on a valuation of £180,000. * * * Policies to be lodged when furnished with B. W. Lougheed, Inc., and to be made out in their name."

The vessel was chartered to the defendant for four round

trips to be operated by the captain and crew of plaintiff, to carry merchandise for the French government, and was delivered to the defendant in New York on June twenty-sixth, loaded by defendant and sailed for France July 4, 1917. On June 30, 1917, the French government assumed the war risk for the steamer by a written instrument, which provided that it was " understood that the Government assumes    *    *    * the above-mentioned risk on the value of the vessel, calculated at the rate of £40 Sterling per ton deadweight, but this value cannot in any case be more than the amount that the France and Canada Steamship Co., Ltd., will pay the owners in the event of the vessel being lost." As the *Kageshima Maru* was of 7,000 tons deadweight the French government would be liable to pay £280,000, but as the amount was limited to the amount that the France and Canada Steamship Company, Ltd., was required to pay to the owners, the government was liable to pay only £180,000.

In August, 1917, plaintiff furnished to defendant proof of loss of the vessel, which proof was submitted by the defendant to the French government. The French government deposited this insurance money, £180,000, or $855,337.51, with J. P. Morgan & Co. upon defendant's vouchers and plaintiff's proofs of loss. Defendant, in September, 1917, accepted assignments against this insurance fund for indebtedness of plaintiff, and after defendant received the moneys from the French government it paid therefrom in January, 1918, the sum of $186,416.92 to the Morse Dry Dock and Repair Company on account of the plaintiff's indebtedness. The action is brought to recover $668,920.58, the balance of said insurance money.

Commissions were issued by the plaintiff to take the testimony of certain witnesses in Japan, whereby it proved that the plaintiff, under the contract of custody, had agreed with the Government Iron Foundry to pay £150,000 for failure to return said steamship. The Government Iron Foundry is owned and operated by the Japanese government, and it was stated in answer to certain questions that this settlement was made with the consent of the Japanese officials. The defendant moved for a commission for the purpose of further examining the witnesses who testified to this settlement and

letters rogatory to examine the government officials in regard thereto.

I cannot see the slightest relevancy or materiality of the testimony that the defendants desire to take. The Japanese government has made no demand for payment of this war risk insurance, and under its contract of custody it had no claim for war risk insurance. The only obligation on the part of the plaintiff to take out marine policies for the benefit of the Japanese government was against the ordinary marine risks. The liability of the plaintiff to pay to the iron foundry as representing the Japanese government was for failure to return the vessel for any cause whatever. It was, therefore, an obligation against the plaintiff and its guarantor. The plaintiff as charterer had an insurable interest to the full value of the ship. It was a special owner because of its liability to pay to the government for her at an agreed price. (*Oliver* v. *Greene*, 3 Mass. 133, 136.)

The defendant agreed to insure against war risks for the benefit of the owner and to deposit the policies with the plaintiff's agent in New York. The defendant insured the vessel and has recovered from the French government the full amount to which it had been agreed between the plaintiff and defendant that war risk insurance should be secured. That this amount is less than the full insurable value of the ship appears from the fact that the French government assumed the liability therefor to the amount of £280,000, qualified, however, by the provision that the amount to be paid should not be more than the defendant was liable to pay. The defendant's liability to pay to this plaintiff was put forward as the claim against the French government and was recognized by it and payment of that amount made. The amount that the plaintiff has to pay the Japanese government has no materiality to the issues in this suit.

Ordinarily the court will not pass upon the relevancy or materiality of the testimony sought to be adduced by a deposition on the application for the granting of the commission. Where, however, as in this case, a large sum of money is in the possession and subject to the risks of the business of the moving party, and a long delay of the trial will ensue, the court will more carefully scrutinize the moving

papers and if the testimony is irrelevant and immaterial, deny the motion.

The order will, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

DOWLING, LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.