Marshall E. Livingston, J.
On July 5, 1966 William O. Compton, the then president of Compton Industries, Inc., was killed while,flying an airplane he had leased from its owner, Ralph L. White.
The aircraft, a Pine Air Limited Super V plane valued at $35,000, was destroyed in the crash, and its hull or aircraft physical damage insurance coverage (comparable to collision insurance coverage for automobiles) at the time of the accident is the subject of these actions.
Mr. Compton owned a similar plane, and because it was to be repaired, he telephoned Mr. White and arranged to lease White’s plane for the repair period. Mr. Compton’s plane was insured by Liberty Mutual Insurance Company (Liberty) for liability and hull damage insurance.
On May 25, 1966 the oral leasing arrangement was. set forth in a letter from White to Compton. The letter stated that Compton was to furnish White with a certificate for insurance naming White as owner and Compton as lessee. It further stated: ‘ ‘ The aircraft 174 S.V. is valued at $35,000: Insurance to cover all ground and air. Liability to also cover R. L. White as owner for the same limits you carry on your Super V aircraft.”
Accordingly, on May 25 Mr. Compton contacted Mrs. Patricia A. Jones, an experienced business sales assistant in Liberty’s Binghamton office, who had authority to bind the company. Mr. Compton told Mrs. Jones he was leasing Mr. White’s plane ivhile his own plane was in for repairs and that he wanted a certificate of insurance for coverage on the White aircraft.
Mrs. Jones then sent a memo to Liberty’s area underwriting office at New Castle, Pennsylvania as follows: “Pis. confirm or advise by return-. Can’t see any reason we can’t issue a Cert, of Ins. to a Mr. White (not add’l ins’d) from whom Compton is renting a plane for 3-4 wks. while his is in for repairs as a result of a cracked center spar. The rental is same Super V as Compton’s. Substitute plane appears to be covered. ’ ’ The inquiry also contained the symbols ‘1 LA ’ ’ and ‘‘ MA ’’, indicating liability and hull coverage respectively.
*797 Mrs. Jones received a reply on May 27,1966 from Mr. Benson which stated: “No coverage for rented plane under MA. Compton is covered under LA. Lessor, Mr. White, should have his own hull coverage.”
On June 1, 1966 Mrs. Jones sent the following memo to Mr. Compton: ‘1 Enclosed is your copy of Certificate for Mr. White for the Aircraft Liability. Since Mr. White owns the plane and has the insurable interest, he would be covering the Physical Damage and, no doubt, including this in your rental fee.” (Italics supplied.)
Three lawsuits have been commenced. Action No. 1 in Supreme Court, Monroe County, is for enforcement of an alleged oral contract of hull insurance, either entered into or which Liberty is estopped from denying. White claims that he was the third-party beneficiary of this alleged hull insurance contract and that Liberty had full knowledge thereof.
No answer has been served. Liberty moves to dismiss on the ground that, pursuant to paragraph 1 of subdivision (a) of CPLR 3211, a defense is founded upon documentary evidence.
Action No. 2 in Supreme Court, Genesee County, is by White against Compton Industries, Inc. and Mr. Compton’s estate. Compton Industries cross-claims against Mr. Compton’s estate in its answer and brings a third-party action against Liberty.
Liberty moves to dismiss this action, pursuant to CPLB 3211, on the grounds that:
“ (a) a defense to the third-party complaint is based on documentary evidence;
“(b) the third-party complaint fails to state a cause of action; and
“(c) another action is pending in Monroe County between the same parties for essentially the same cause of action.”
Action No. 3 in Supreme Court, Monroe County, is by Compton Industries against Liberty and asks for substantially the same relief as the third-party suit in Action No. 2. In addition, however, it asks for indemnification for expense in defending these lawsuits.
Liberty moves to dismiss this action on the ground that the complaint fails to state a cause of action and that the action is prematurely brought.
The documentary evidence relied on by Liberty, which it asserts is a complete defense to the actions by White and Compton Industries as plaintiff and third-party plaintiff respectively, consists of:
(1) Aircraft physical damage policy (hull insurance) issued to Mr. Compton on his own plane.
*798 (2) Aircraft liability policy issued to Mr. Compton on his own plane.
(3) Certificate of insurance dated June 1,1966, naming Ralph L. White as an additional insured under the aircraft liability policy.
(4) Several inter-office memos between the Binghamton and New Castle, Pennsylvania, offices of Liberty.
(5) Memo from Mrs. Jones to Mr. Compton dated June 1, 1966.
(6) The record of an examination before trial of Liberty in Action No. 2 on July 8, 1969, in Binghamton.
For the purposes of these motions, the examination before trial of Liberty’s employees held on July 8, 1969 is considered as being applicable to all the actions, although the caption does not so indicate.
Liberty claims that the above-enumerated' documentary evidence requires a dismissal of the various complaints. I do not agree.
For instance, Mrs. Jones at the examination before trial was asked if Mr. Compton ever discussed hull coverage on Mr. White’s plane with her, and she said he definitely did not. Yet the inquiry to New Castle and Mrs. Jones’s memo which she said she sent to Mr. Compton raise issues concerning her testimony. Nor can it be said as a matter of law that Mrs. Jones’s memo to Mr. Compton of June 1, 1966 was not a representation on which he had a right to rely.
Strictly speaking, Mr. Benson’s reply of May 27 to Mrs. Jones’s inquiry was accurate. However, Mrs. Jones’s interpretation of it to Compton indicates that Mr. White alone had the ‘1 insurable interest ’ ’ and thus carried his own hull insurance and was charging Mr. Compton for it. Mrs. Jones was the first person employed by Liberty to raise a question of ‘ ‘ insurable interest ”, and her interpretation to Compton was wrong because Compton’s interest was equally insurable.
The import of Benson’s statement in his memo that: “No coverage for rented plane under MA. Compton is covered under LA ’ ’ cannot be interpreted as a matter of law. Did Mr. Benson mean Compton cannot be covered for White’s plane for hull damage, or did he simply mean that Compton’s MA policy had no “temporary substitute” provision in it as did his LA policy? In any event it can be argued that Mrs. Jones misinterpreted the reply and wrote Compton in effect that he could not get hull insurance on White’s plane.
Liberty, on the oral argument and in its memorandum of law, avers that it could not have covered the White aircraft *799 with hull insurance because Mr. Compton had no insurable interest in the leased plane. This was not so.
Section 148 of the Insurance Law provides: “No contract or policy of insurance on property made or issued in this state, or made or issued upon any property in this state, shall be enforceable except for the benefit of some person having an insurable interest in the property insured. The term ‘ insurable interest ’, as used in this section, shall be deemed to include any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage.” (Italics supplied.)
By the terms of the lease or arrangement between White and Compton, Compton was charged with insuring the plane, said to be valued at $35,000, and was to return the plane at the end of the rental period in the same condition as it was when leased. This then is precisely what section 148 of the Insurance Law means when it deems the term ‘ ‘ insurable interest ’ ’ to include any lawful and substantial economic interest in the preservation of the property from loss or destruction.
As the court said nearly 50 years ago in Goshi Kaisha Yamamoto Sohonten v. France & Canada S. S. Co. (196 App. Div. 551, 554): “ The * # * charterer had an insurable interest to the full value of the ship.” (See, also, 30 N. Y. Jur., Insurance, §§ 748, 752 and cases cited therein.)
Liberty also contends that White cannot be a third-party beneficiary to Compton’s alleged oral contract of insurance with Liberty, because Compton had no “ insurable interest ” in the White aircraft. However, Compton had a very real insurable interest in White’s aircraft, so now it must be determined whether White should be allowed to try to establish that he is indeed a third-party beneficiary of Compton’s alleged reliance on Mrs. Jones’s representations.
The factors necessary for White, as a third-party beneficiary, to enforce an alleged contract of insurance procured by Compton, the promisee, for White’s benefit from Liberty, were delineated nearly 100 years ago in Vrooman v. Turner (69 N. Y. 280, 283-284). As applied to this case White must show:
(a) an intent by Compton (the promisee) to secure some benefit to White (the third party);
(b) some privity between Compton and White; and
(c) some obligation or duty owing from Compton to White which would give White a legal or equitable claim to the alleged contract of hull insurance.
These cases should not be dismissed at this stage because there are many matters which must be resolved either by a court or a jury after a trial.
*800 Plaintiff may spell out a question of estoppel against Liberty based on testimony which is not now before the court or which might be found or reasonably inferred from all the evidence.
These causes of action seem to be based on negligence in the spoken word, liability for carelessness in making statements upon which others were expected to rely, and upon which they did rely, to their damage. A negligent statement may be the basis for recovery of damage (Nichols v. Clark, MacMullen & Riley, 261 N. Y. 118). The complaints do not spell this out, but the allegations therein, if proven, would support such a theory.
The issue is whether under these circumstances Mr. Compton relied on the representations made by Mrs. Jones and thus failed to pursue further the matter of hull insurance for the plane he had leased from White.
The principles here are not unlike International Prods. Co. v. Erie R. R. Co. (244 N. Y. 331) where a recovery was affirmed because of erroneous information. In that case Judge Andrews wrote (p. 338): “Liability in such cases arises only where there is a duty, if one speaks at all, to give the correct information. And that involves many considerations. There rpust be knowledge or its equivalent that the information is dekired for a serious purpose; that he to whom it is given intends to rely and act upon it; that if false or erroneous he will because of it be injured in person or property. Finally the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care. (Jaillet v. Cashman, 235 N. Y. 511.) An inquiry made of a stranger is one thing; of a person with whom the inquirer has entered or is about to enter into a contract concerning the goods which are or are to be its subject is another.”
The claim by Liberty that Action No. 3 is premature is not wholly accurate, and I decline to dismiss the action on that ground.
At the proper time motions will no doubt be made to change the venue to the proper county for trial, to consolidate Action No. 3 with the third-party complaint in Action No. 2, and for a joint trial.
Submit orders, approved as to form, denying the motions in all cases.